1              UNITED STATES DISTRICT COURT
                    DISTRICT OF NEVADA
2    BEFORE THE HONORABLE HOWARD D. McKIBBEN, SENIOR DISTRICT JUDGE
                        ---o0o---
3

4    UNITED STATES OF AMERICA,    : No. 3:16-cr-016-HDM-WGC-1
                                  :
5              Plaintiff,         :
                                  : February 8, 2017
6         -vs-                    :
                                  :
7    STEVEN EUGENE FORD; aka      : United States District Court
     Job Ford; aka Eleazar        : 400 S. Virginia Street
8    Melchizedek,                 : Reno, Nevada  89501
                                  :
9              Defendant.         :
     _____:
10

11

12                    **TRANSCRIPT OF SENTENCING**

13

14   A P P E A R A N C E S:

15   FOR THE GOVERNMENT:      Brian Sullivan
                              Assistant United States Attorney
16                            Reno, Nevada

17

18   FOR THE DEFENDANT:       Dennis Cameron
                              Attorney at Law
19                            Reno, Nevada

20

     PROBATION OFFICER:       Dan McCaw
21

22

     Proceedings recorded by mechanical stenography produced by
23   computer-aided transcript

24

     Reported by:             KATHRYN M. FRENCH, RPR, CCR
25                            NEVADA LICENSE NO. 392
                              CALIFORNIA LICENSE NO. 8536

| | | |
|---|---|---|
| 08:21:20 | 1 | Reno, Nevada, Wednesday, February 8, 2017, 8:30 a.m. |
| 08:21:21 | 2 | ---oOo--- |
| 08:27:00 | 3 | |
| 08:27:00 | 4 | THE CLERK:  This is the date and time set for |
| 08:27:03 | 5 | Sentencing in case number 3:16-cr-016-HDM-WGC, United States |
| 08:27:09 | 6 | of America versus Steven Eugene Ford. |
| 08:27:16 | 7 | Defendant is present in custody with counsel |
| 08:27:23 | 8 | Dennis Cameron. |
| 08:27:25 | 9 | Appearing on behalf of the government is |
| 08:27:28 | 10 | Brian Sullivan. |
| 08:31:42 | 11 | THE COURT:  All right.  Thank you. |
| 08:31:42 | 12 | As indicated, this is the time set for imposition |
| 08:31:47 | 13 | of judgment and sentence. |
| 08:31:48 | 14 | Is the government ready to proceed? |
| 08:31:50 | 15 | MR. SULLIVAN:  Yes, we are. |
| 08:31:51 | 16 | THE COURT:  Is the defense ready to proceed? |
| 08:31:53 | 17 | MR. CAMERON:  Yes, Your Honor.  Thank you. |
| 08:31:54 | 18 | THE COURT:  I have received and considered the |
| 08:31:56 | 19 | Presentence Investigation Report.  The parties have been |
| 08:31:59 | 20 | provided with a copy of the report.  The defendant has been |
| 08:32:02 | 21 | provided with a copy of the report to review. |
| 08:32:05 | 22 | Are there any factual errors in the report that |
| 08:32:07 | 23 | either the government or the defense wishes to bring to my |
| 08:32:10 | 24 | attention? |
| 08:32:10 | 25 | MR. SULLIVAN:  No, Your Honor. |

3

08:32:11   1          MR. CAMERON:  No, Your Honor.

08:32:12   2          THE COURT:  And are there any disputes with

08:32:14   3   respect to the calculations under the Guidelines, other than

08:32:17   4   those that have been set forth in the Memorandum filed by the

08:32:20   5   defense in this case?

08:32:21   6          Does the government have any?

08:32:22   7          MR. SULLIVAN:  No, Your Honor.

08:32:23   8          THE COURT:  Does the defense have any additional

08:32:25   9   ones?

08:32:25   10          MR. CAMERON:  Your Honor, I have -- it's

08:32:29   11   difficult to say.  I reviewed the Guidelines again last night.

08:32:33   12   If we are to prevail on the issues that we brought into

08:32:37   13   contention through our objections, it appears that there

08:32:41   14   would also be a four-level reduction that would be available

08:32:44   15   for the defendant.  So my final calculation was, if the

08:32:49   16   Court goes with us on the objections, the final Guideline

08:32:53   17   calculation would be 11 rather than 22.  And I don't think I

08:32:57   18   put 11 in because I did not include the four-level reduction.

08:33:04   19          THE COURT:  In connection -- how did you make

08:33:08   20   that calculation?

08:33:10   21          MR. CAMERON:  Well, Your Honor, if the Court

08:33:13   22   were to find that there were not more than two -- there were

08:33:16   23   not threats against more than two victims -- in other words,

08:33:20   24   three or more victims, the last part of that Guideline

08:33:24   25   indicates, and I have it here, that there would be a

08:33:27  1   four-level reduction from a 12-level base offense.  There

08:33:31  2   would, of course, be an additional three-level increase

08:33:34  3   because then it would be the three-level increase for threat

08:33:37  4   against the President of the United States, rather than the

08:33:39  5   six-level increase.

08:33:43  6            THE COURT:  Oh, I see what you're talking about.

08:33:45  7   Right.

08:33:45  8         Well, I'll have to have argument on --

08:33:48  9            MR. CAMERON:  Correct.  I just wanted to let the

08:33:50  10  Court know that was the final calculation that I came out with

08:33:54  11  last night after going over it again.

08:33:56  12           THE COURT:  All right.  You may proceed on your

08:33:58  13  argument on behalf of the defense.

08:34:01  14           MR. CAMERON:  Thank you.  Do you want to hear

08:34:02  15  from me from the table or the podium?

08:34:04  16           THE COURT:  Whatever is more convenient for you.

08:34:08  17  Either remain seated here --

08:34:09  18           MR. CAMERON:  If the Court doesn't mind, I'll

08:34:11  19  remain seated.  Thank you.

08:34:13  20         Your Honor, in our response to the defendant's -- or

08:34:16  21  to the government's -- I'm sorry.

08:34:19  22         In our Memorandum, and in the government's

08:34:23  23  Memorandum, there is a marked difference in the determination

08:34:27  24  of the Guidelines.  The government is asking for the Court

08:34:31  25  to find that there were more than two victims in this case,

08:34:35  1   threats made against more than two people.  What that

08:34:39  2   ultimately results in is a 500 percent increase in his

08:34:46  3   sentence at the low end of the Guidelines, in that the

08:34:50  4   calculation, without more than two threats, turns out to

08:34:56  5   be a level 11 with no criminal history, as opposed to

08:35:00  6   a level 22 with no criminal history, and that being a

08:35:03  7   recommendation at the low end of eight months, compared

08:35:06  8   to a recommendation of 41 months.  Simply on the face of

08:35:10  9   it -- and I'll get into this more when I actually talk in

08:35:13  10  terms of variance -- that's a ridiculous result.

08:35:17  11          In this particular case, the defendant was convicted

08:35:24  12  of a threat against the President of the United States.

08:35:27  13  Clearly, the jury spoke in that area and he's guilty of that

08:35:32  14  offense.  Under the Guidelines, that gets manipulated quite

08:35:36  15  a bit depending upon whether there were other threats.

08:35:39  16          It's interesting to note that he was acquitted

08:35:42  17  in the threat against the White House operator.  And there was

08:35:46  18  only one theory advanced by the defense in defense of that

08:35:52  19  particular charge, and that was that all the threats in

08:35:56  20  the conversation were directed against the President of the

08:35:59  21  United States.

08:36:00  22          We articulated to the jury that he didn't know the

08:36:05  23  White House operator, had no idea she was going to answer the

08:36:07  24  phone.  She did not have children -- where the President of

08:36:10  25  the United States did have children -- and that these threats

08:36:13  1   were gender neutral.

08:36:17  2           He had called the White House comment line, not to

08:36:21  3   threaten the person that answered the phone, but to threaten

08:36:23  4   the President of the United States.  That's the theory we

08:36:27  5   advanced to the jury and the jury came back and found him

08:36:30  6   guilty of threatening the President of the United States,

08:36:33  7   and not guilty of threatening the White House operator.

08:36:36  8           The government quite correctly points out that the

08:36:39  9   Court can overlook that if he believes there's preponderance

08:36:41  10  of evidence that he also threatened the White House operator.

08:36:47  11  It's interesting to know that in the Revised Presentence

08:36:50  12  Report, the Division takes out the threat against the White

08:36:54  13  House operator because we've pointed out to them -- I've

08:36:57  14  pointed out to them in our objections that he was acquitted

08:37:00  15  of that charge.  They did not seem to think there was a

08:37:03  16  preponderance of evidence because they took the White House

08:37:06  17  operator out of the allegations of additional threats.  We ask

08:37:10  18  the Court to do the same thing, looking at the same argument

08:37:13  19  we made to the jury and the result of that argument.

08:37:15  20          The fact that the White House operator may have

08:37:20  21  thought the threats were against her is not a preponderance

08:37:23  22  of evidence because the threats are gender neutral, and the

08:37:28  23  results of the call was to threaten the President of the

08:37:30  24  United States.

08:37:34  25          The Court sat through the trial and heard the

08:37:37  1    arguments on that.  The fact the government's opinion is
08:37:39  2    different, I don't think, really charges the factual scenario.
08:37:44  3    I don't think the White House operator counts as additional
08:37:48  4    threats.  That doesn't necessarily answer the problem in
08:37:51  5    its entirety because the government is also alleging threats
08:37:54  6    against Hillary Clinton because I think there was a throw-down
08:37:58  7    thing, I wish she was dead, and against the FBI in a series
08:38:02  8    of unrelated calls that were made to the FBI, I believe, the
08:38:07  9    same day.  But it doesn't indicate -- I believe they were made
08:38:11  10   before the call to the White House operator because that was
08:38:14  11   done in the dead of night.

08:38:16  12         My problem with that is that the same, the same
08:38:24  13   Guideline application that says, hey, you need to count up
08:38:28  14   these threats, and if there's more than two; i.e. three --
08:38:31  15   and they would still claim there was three because they have
08:38:34  16   Hillary Clinton and the FBI -- for the Court to discount
08:38:40  17   the White House operator, but the applications to that note
08:38:44  18   says "conduct that occurred prior to the offense must be
08:38:48  19   substantially and directly connected to the offense," under
08:38:52  20   this particular Guideline application.  And the uncharged
08:38:58  21   threats with the FBI are not so connected, they have nothing
08:39:01  22   to do with the threat against the President of the United
08:39:04  23   States.  They were made at a different times and they're not
08:39:06  24   charged.  So, I think the Application Note negates that.
08:39:12  25         So even if the Court were to find that there was

08:39:15   1   some veiled threat against Hillary Clinton that was mentioned

08:39:20   2   in the call or the threat against the President, that would

08:39:22   3   still only leave two, and it wouldn't trigger the increase

08:39:26   4   that they're talking about.

08:39:29   5        So, that's our position regarding the two-level

08:39:32   6   increase for multiple threats.  And as I've argued to the

08:39:38   7   Court already, because that triggers the absence of the

08:39:41   8   four-level reduction and increase of six levels rather than

08:39:44   9   three levels, because the Guidelines are quite clear that

08:39:48   10  the threat against the President of the United States is a

08:39:52   11  three-level increase.  It's only a six-level increase because

08:39:55   12  they're finding multiple victims under the first application

08:40:00   13  where there has to be more than two.  I think that really

08:40:05   14  leaves that in my client's favor because the uncharged conduct

08:40:11   15  has to be closer related to the offense that is charged and

08:40:15   16  it's simply not in this case.

08:40:16   17       I don't think I can make the same argument about

08:40:20   18  the Hillary Clinton threat, except that wasn't much of a

08:40:25   19  threat.  I think he said, "I wish she was dead."  It could

08:40:31   20  just be a desire rather than a threat but, even so, those

08:40:35   21  two, the threat against the President and the alleged threat

08:40:38   22  against Hillary Clinton, which is also uncharged, only leaves

08:40:41   23  them with two and they need more than two.  I think they need

08:40:45   24  at least three.

08:40:46   25       So, if the Court discounts the FBI phone calls,

08:40:49  1   which are unrelated under the Application Note and should not

08:40:51  2   be considered, then I think that it shifts the calculation

08:40:57  3   back as I have described it to the Court.

08:40:58  4           THE COURT:  But, you would concede there would

08:41:00  5   be three if the Court counts the one against the operator and

08:41:04  6   also the one against Hillary Clinton?

08:41:06  7           MR. CAMERON:  No.  If the Court counted -- if

08:41:08  8   it counted the one against the operator, and counted the one

08:41:11  9   against Hillary Clinton, then I think it's simple math.  Those

08:41:16  10  are three threats.

08:41:17  11          THE COURT:  Right.

08:41:18  12          MR. CAMERON:  But, I feel strongly that there's

08:41:20  13  not a preponderance of evidence about the threat against the

08:41:24  14  White House operator.  I think that was clearly decided by the

08:41:27  15  jury.

08:41:27  16          THE COURT:  Well, she was -- it was decided --

08:41:30  17  the evidence was insufficient beyond a reasonable doubt, but

08:41:33  18  they didn't decide anything about a preponderance of the

08:41:36  19  evidence.

08:41:36  20          MR. CAMERON:  No.

08:41:37  21          THE COURT:  She was very, very, uh, disturbed by

08:41:41  22  that threat, I could tell, when she testified here.  And he

08:41:45  23  did use the word "bitch" in connection with that --

08:41:47  24          MR. CAMERON:  And I think --

08:41:48  25          THE COURT:  -- directly with her.

08:41:51  1          MR. CAMERON:  Yes.  And I think we took

08:41:53  2   testimony from her, and at least another witness, one of

08:41:56  3   the agents, that that was a gender neutral term, especially

08:42:01  4   considering she had no children.  He had no knowledge of her.

08:42:04  5   He had no beef against her.  And, he had no reason to threaten

08:42:08  6   her.  And if you look at it as a gender neutral statement,

08:42:12  7   those are all threats against the President of the United

08:42:14  8   States, and that's what the jury found.

08:42:20  9          THE COURT:  All right.  Go ahead.

08:42:23  10         MR. CAMERON:  In regards to the increase for

08:42:25  11  obstruction of justice, this becomes a much dicier subject,

08:42:29  12  Your Honor.  My recollection, and the Court sat through the

08:42:37  13  trial, is that I asked him if he remembered making the

08:42:40  14  threats.

08:42:40  15         THE COURT:  Well, you're right on part of that.

08:42:42  16  I have -- I directed that I get a portion of the transcript

08:42:46  17  that dealt with this.  And the part that is most troubling to

08:42:51  18  the Court is that, at the final portion of his examination on

08:42:54  19  the cross-examination, this is what was said exactly:

08:43:01  20          "On the night of the 1st, were you drunk or do you

08:43:01  21  remember?"

08:43:05  22          He says, "I do not remember" -- about making the

08:43:07  23  threats -- "I'm denying that.  I have no knowledge of those

08:43:10  24  threats at all.  I did not make those threats."

08:43:12  25          So, that's a specific denial.

08:43:15  1          Then at the end of the cross-examination, the

08:43:20  2    question was:

08:43:21  3          "So you deny that you made those threats?

08:43:24  4          "Answer:  Yeah."

08:43:28  5              MR. CAMERON:  Okay.  Well, my response --

08:43:30  6              THE COURT:  Actually, what he says is, "Yeah, I

08:43:32  7    sure am denying it."

08:43:35  8          So, I mean, that's a specific denial of the threats.

08:43:37  9    I would have agreed with you up to that point that the way

08:43:40  10   you phrased the questions and the way he responded to them,

08:43:43  11   it was more in the sense of he didn't have a recollection.

08:43:46  12   But on cross-examination, it was specifically asked and he

08:43:49  13   made those specific responses, which were not true.

08:43:53  14             MR. CAMERON:  Well, one of the things the Court

08:43:55  15   has to do under the case law, when you're talking in terms of

08:44:00  16   perjury, is find that each element of perjury is fulfilled.

08:44:04  17   And the defendant did testify under oath, which is the first

08:44:08  18   element.  We're not agreeing that the testimony was false,

08:44:13  19   and we're all agreeing on which statement was false.  Because

08:44:16  20   I think what happened is he came up and made his testimony,

08:44:20  21   and that testimony was quite clear that he did not recall

08:44:23  22   making the threats.  That testimony was bolstered by the fact

08:44:30  23   that he's got a fragile mental state.  We went into great

08:44:35  24   length in our Sentencing Memorandum to point that out to the

08:44:38  25   Court, attaching the medical doctors reports and everything

08:44:41  1  else that centered around that particular night.  He was

08:44:45  2  floridly psychotic the next morning, when he was picked up

08:44:50  3  for a week and put on Risperdal and other mental health

08:44:53  4  medications before he could be brought back to a point where

08:44:55  5  his thought was fluid, but tangential.

08:44:57  6      So I think it's -- that, coupled with the fact that

08:45:00  7  he had been drinking excessively that night, the fact that

08:45:03  8  the agents knew that he was rambling incoherently both on the

08:45:09  9  phone, which was described by the White House operator, and

08:45:12  10  on their observations of him during their interrogation, it's

08:45:17  11  quite possible that he did not remember, at the point in time

08:45:21  12  he testified, whether or not he had made the threats.

08:45:24  13      There is a difference between being cross-examined

08:45:28  14  and pushed by the prosecutor, where I think, if I understand

08:45:32  15  what the Court read me, he first, again, affirmed he did not

08:45:37  16  remember the threats.  And then the prosecution pushed it and

08:45:41  17  stated, "Did you make the threats?"  And he said no.  And I

08:45:46  18  think the Court was reading that from the transcript.

08:45:49  19      But taking it in context, he did in fact indicate

08:45:51  20  that he didn't remember, both to me and to the prosecutor.

08:45:55  21  And I think he just switched gears and said, no, I didn't.

08:46:00  22  He may not have understood the question completely or he may

08:46:05  23  not have been able to answer it.  He may have just gotten

08:46:08  24  angry again.  I don't know what his mental state was.

08:46:11  25  But, the fourth element is that he acted willfully and

08:46:13  1    deliberately with the knowledge that the testimony was false.

08:46:16  2    And I don't think that that's proved by a preponderance of

08:46:18  3    evidence in the context of the questioning the Court just

08:46:22  4    read.  It's clear what his testimony was.  They wanted a

08:46:26  5    denial, is why they kept asking the question.  And I think

08:46:32  6    that's really what the Court has to make a decision on.

08:46:35  7         What was the gist of his testimony?  Did he get

08:46:37  8    confused?  Did he get backed into a corner?  Did he get angry?

08:46:42  9         What's the difference if say I don't remember three

08:46:45  10   times, and you say I didn't make it once?  What's the gist of

08:46:48  11   the testimony at that point in time?  Is that perjury or is

08:46:52  12   that just his answer to a question?

08:46:57  13        I don't think it meets the elements of perjury.  I

08:47:00  14   don't think it's a case the government would bring and try to

08:47:03  15   prove.  It's simply not there.  His testimony was very clear.

08:47:07  16   It wasn't to confuse the jury.  He testified I don't remember

08:47:11  17   and I think he had a good basis, good faith basis for making

08:47:15  18   that answer because he didn't remember.  He was in an altered

08:47:20  19   mental state at the time this took place.  That was our

08:47:23  20   position at the time, that was the position of the medical

08:47:26  21   records that we supplied the Court.  He was drunk.  It was

08:47:31  22   testified to by the agents.  It was testified to by the

08:47:33  23   doctors that examined him the next day and took him into

08:47:36  24   protective custody.  So, I don't think that's a really strong

08:47:40  25   argument for the government.

14

08:47:41  1          I understand the Court, and I appreciate the Court

08:47:44  2   taking the time to look at the testimony because I did not

08:47:47  3   remember that particular statement, so I thought that was a

08:47:50  4   fairly moot point.  But, I don't think that's enough to change

08:47:54  5   the rulings that the Court should make on that particular

08:47:58  6   issue.

08:47:59  7          THE COURT:  All right.  Go ahead with anything

08:48:02  8   else you have.

08:48:02  9          MR. CAMERON:  Your Honor, other than that, I

08:48:03  10  think those were the two areas we were objecting to as to the

08:48:09  11  Guideline calculations.  We do have other arguments to make

08:48:12  12  by way of a variance when that time comes.  But, I think

08:48:16  13  that --

08:48:16  14         THE COURT:  Just go ahead and make all of your

08:48:18  15  arguments.

08:48:18  16         MR. CAMERON:  Oh, okay.

08:48:20  17         THE COURT:  That's fine.

08:48:20  18         MR. CAMERON:  We'll go from there then, Your

08:48:20  19  Honor.

08:48:23  20         I am going to stand up.  I'm tired of sitting down.

08:48:23  21         THE COURT:  That's fine.

08:48:27  22         MR. CAMERON:  Your Honor, in terms of variance

08:48:29  23  in this case, the Guidelines, as I pointed out, are not

08:48:35  24  binding on this court.  What's binding on the Court is to

08:48:38  25  follow the Sentencing Statute.  And in this particular case,

08:48:42 1 if we -- as we've pointed out, my client has been in custody

08:48:46 2 over 11 months.  The base Guideline offense is 12 months --

08:48:53 3 I'm sorry.  It's 8 to 14 months at a -- it's a level 12, which

08:49:01 4 is 10 to 16 months under the Guidelines.

08:49:05 5          The adding and subtracting of the other threats is

08:49:10 6 certainly not a reasonable way to decide this case.  I don't

08:49:15 7 think any judge would ever say, hey, you should go five times

08:49:20 8 the sentence for an acquitted or uncharged conduct.  And I

08:49:24 9 don't even think the Guidelines call for that, if the Court

08:49:27 10 in fact follows our interpretation of what they mean.  But

08:49:32 11 even if the Court doesn't, the Guideline sentence arrived at

08:49:37 12 in this case is unrealistic and unreasonable.  You don't

08:49:41 13 increase 500 percent for something that you, A, didn't do;

08:49:47 14 or, B, weren't charged with.

08:49:49 15          As I pointed out in my moving papers, this

08:49:52 16 particular defendant was living an unhappy existence, of what

08:49:58 17 could only be described as a hubble.  He's a disabled veteran.

08:50:03 18 He would save his money once a month so he could drink himself

08:50:08 19 into a stupor.  He had significant mental problems.  In fact,

08:50:12 20 the very next day, he was diagnosed by psychiatrists as being

08:50:16 21 floridly psychotic.  I don't think he changed much from that

08:50:21 22 evening to that morning, Your Honor.

08:50:22 23          He called in the middle of the night to the White

08:50:25 24 House comment line and he said "I hate the President.  I want

08:50:31 25 him dead.  I'll kill his children.  I'm burn him.  I'll hang

16

08:50:34  1    him."  Whatever his threats were, were more of a deflection

08:50:38  2    from his own anger and unhappiness than they were a legitimate

08:50:42  3    threat against the President of the United States.  The threat

08:50:45  4    was there, but there's no indication from anyone he ever

08:50:48  5    intended to act out on it, that he had the ability to act

08:50:52  6    out on it.  He's 3,000 miles away.  He doesn't even have a

08:50:56  7    car to put gas in.  He doesn't have money to make a trip to

08:50:59  8    do anything.  This was simply an individual lashing out

08:51:04  9    because he was drunk, because he was disoriented, and because

08:51:08  10   he was particularly unhappy with his own circumstances.

08:51:13  11        Now, that's a crime because he did call and he did

08:51:16  12   make the threats and the jury, rightfully, found that he was

08:51:19  13   guilty of that.  But under the Sentencing Statute, we're

08:51:23  14   supposed to look at something that will give respect for law

08:51:27  15   enforcement -- respect for the law.  I'm sorry.  Not law

08:51:30  16   enforcement.  He's done 11 months.  He has lost everything

08:51:35  17   he owns.  This man has, basically, the clothes that he

08:51:41  18   was booked with.  He has no place to go.  He's lost his

08:51:45  19   apartment -- although he indicates to me that they will

08:51:48  20   rent back to him once he gets a check from his disability.

08:51:51  21   He has no clothing.  He has nothing in his name.  Everything

08:51:55  22   else is gone.  That's a pretty significant punishment for

08:52:01  23   being drunk, having mental impairments, and lashing out in

08:52:06  24   the middle of the night by calling the White House comment

08:52:09  25   line.  He was making comments, in his own mind, but they were

08:52:14   1    threats because he was an angry, unhappy human being.

08:52:19   2              So, 11 months in custody, and five years probation,

08:52:23   3    as we have suggested, is not only a just punishment for this

08:52:27   4    crime, because the base offense is only 10 to 16 months

08:52:33   5    absent these enhancements that the Court is looking at under

08:52:36   6    the Guidelines, which we think are totally irrational.

08:52:40   7    And, that happens sometimes when you have a one size

08:52:45   8    fits all sentencing system.  The Guidelines don't take into

08:52:50   9    consideration this man's circumstances.  They don't take into

08:52:54   10   consideration the facts, the motivation, what caused this

08:52:58   11   crime.  What they do is count up number of threats.

08:53:02   12             Well, we've addressed that with the Court already.

08:53:05   13   We don't think there's enough to trigger that.  So if you're

08:53:08   14   really at a level 12, the 11 months he's already done

08:53:12   15   fulfills what the Guidelines directs.  It's only the

08:53:15   16   additional sentencing that we think is unrealistic in this

08:53:19   17   case.

08:53:19   18             THE COURT:  Well, how do you calculate paragraph

08:53:23   19   20 if the Court ultimately determines there should not be a

08:53:26   20   two-level increase on multiple threats?

08:53:29   21             MR. CAMERON:  If there's not a two-level

08:53:31   22   increase on multiple threats, then that not only takes away

08:53:35   23   those two levels, because the Guideline applications say if

08:53:40   24   there's not that increase, there's a four-level decrease.

08:53:44   25   So, you go down four levels there.  And then when you come

08:53:48  1  back to the threat against the President of the United States,

08:53:50  2  you use the specific Guideline that says there's a three-level

08:53:54  3  increase, not the second one that says there's a six-level

08:53:57  4  increase if there's multiple threats.  So, whether or not

08:54:00  5  there's multiple threats really attacks on three levels.

08:54:05  6              THE COURT:  What section of the Guideline

08:54:07  7  reduces it by four levels?

08:54:10  8              MR. CAMERON:  Hold on, Your Honor.  I'll pick

08:54:12  9  that up.  It's in my --

08:54:13  10             THE COURT:  Is that correct?

08:54:15  11             PROBATION OFFICER:  We would disagree with

08:54:17  12  Mr. Cameron's position on that.

08:54:18  13             THE COURT:  Yeah, there's been no memorandum

08:54:20  14  filed in connection with that.  This is the first time I've

08:54:23  15  heard that.

08:54:23  16             MR. CAMERON:  That's just because I looked at it

08:54:26  17  last night.  It's number six.

08:54:26  18             PROBATION OFFICER:  That is correct.  You

08:54:27  19  are citing to case citations; however, it is not an automatic

08:54:33  20  reduction of four levels.  There are two prongs to that

08:54:36  21  specific offense characteristic that the Court would be

08:54:38  22  required to make a finding that both prongs of that are met.

08:54:38  23             MR. CAMERON:  And that would be --

08:54:42  24             PROBATION OFFICER:  The first one is met because

08:54:43  25  the base offense level is not determined under A.  The second

08:54:46  1   part of that requires the Court to make a finding that the

08:54:50  2   offense involved a single instance evidencing little or no

08:54:54  3   deliberation.  It would require the Court to make that finding

08:54:57  4   in order for that four-level to apply.

08:55:01  5               MR. CAMERON:  And I agree.  I think this was

08:55:02  6   a single instance when he called up that night with little or

08:55:04  7   no deliberation.  I think he was called because he was drunk

08:55:10  8   and it was a reflex action.

08:55:11  9               So, what I'm telling the Court is that could apply

08:55:15  10  as the four-level decrease.

08:55:18  11              THE COURT:  What's the section on that Guideline

08:55:20  12  again?  Could you just show me?  Pull it out on yours and then

08:55:24  13  show it to me.

08:55:26  14              Go ahead, counsel.

08:55:26  15              PROBATION OFFICER:  Do you want me to bring it

08:55:27  16  to Your Honor?

08:55:27  17              MR. CAMERON:  I think it's 2A6.1 subsection 6.

08:55:56  18              THE COURT:  Okay.

08:55:56  19              Yeah.  Go ahead.

08:55:57  20              MR. CAMERON:  And just to be absolutely clear,

08:55:59  21  even if the four-level reduction is not applied by the Court,

08:56:02  22  there would still be a three-level reduction if the two-level

08:56:05  23  increase for multiple threats wasn't found by the Court,

08:56:09  24  because that changes the Guideline back to a threat against

08:56:14  25  the President, which is a three-level increase, rather than a

08:56:17   1    multiple threats, which is a six-level increase.

08:56:22   2                   THE COURT:  Yes.  Go ahead.

08:56:23   3                   MR. CAMERON:  Okay.  Getting back away from

08:56:26   4    the Guidelines for just a second, Your Honor, and back to the

08:56:29   5    Sentencing Statute itself, one of the things the Sentencing

08:56:32   6    Statute calls out is medical help for the defendant.  And if

08:56:39   7    you look at this case factually, that's the root cause of what

08:56:45   8    happened.  That, coupled with his drinking and his general

08:56:48   9    unhappiness, the fact that he had a mental episode that night,

08:56:54   10   which was borne out by his being taken into custody the next

08:57:00   11   day by the Veterans Hospital, and being found Floridly

08:57:06   12   psychotic, and being brought back down with mental health

08:57:10   13   medication, to a point where he was still tangential, but he

08:57:12   14   could hold fluid thought, the very next day they kept him for

08:57:16   15   a week, Your Honor.  That's really the essence of what needs

08:57:18   16   to be done in this case.  If you want to stop recidivism from

08:57:22   17   this particular individual, then you treat him for the problem

08:57:25   18   that he has.  That's called out for by the Sentencing Statute.

08:57:31   19   It works into what would be just punishment for this case;

08:57:36   20   the 11 months he's already done; the fact that he's lost

08:57:39   21   everything, the fact that -- that comports with a level 12,

08:57:43   22   that's the base offense for this particular crime.  And, it

08:57:48   23   answers the root cause of the crime, Your Honor.

08:57:51   24          He will be on probation, if you follow our

08:57:55   25   recommendation, after having done over 11 months, which

08:57:58  1    is a significant sentence and certainly covers the other

08:58:01  2    aspects of the Guidelines, and it will be further reinforced

08:58:05  3    by five years of probation, which is available under the

08:58:08  4    statute in this case, on which he could have the requirement

08:58:14  5    to seek out mental health counseling through the VA; the

08:58:18  6    requirement to stay on whatever medications they direct him to

08:58:22  7    stay on.

08:58:23  8              I mean, the Court heard the testimony in this case;

08:58:28  9    that's what the basis of this threat was.  It's been the

08:58:32  10   problem with this young man for a long time.  He needs the

08:58:37  11   help and it addresses the other aspects of the Sentencing

08:58:41  12   Guidelines because it makes sure that it protects the public

08:58:44  13   because he's going to be getting the help that he needs.

08:58:47  14   When he was on that medication and he's being helped by the

08:58:51  15   doctors, he was okay to be released back into the public.

08:58:57  16   I don't think that it's -- and I'll be quite candid with the

08:59:03  17   Court.  The things that he said were ugly and he's being

08:59:11  18   punished for that severely.  Eleven months in custody; he's

08:59:15  19   lost everything he owns; he's under the specter of going to

08:59:19  20   prison for 51 months.  But, he hasn't done anything but

08:59:25  21   rant.  And there's a reason he's ranting, Your Honor.  His

08:59:30  22   circumstances in life, for a disabled veteran to be saving

08:59:35  23   his money so he can get drunk once a month, and he just

08:59:39  24   had a breakdown.  He wanted to vent.  He was angry.  And, he

08:59:44  25   deflected where a lot of people deflect.  Well, it must be

22

08:59:48  1   the President's fault.  He didn't say what he was angry at

08:59:51  2   the President for.  He just called up and made these stupid

08:59:55  3   threats.  He compounded it by calling the FBI earlier in an

08:59:59  4   unrelated incident; by calling the Kremlin in an unrelated

09:00:05  5   incident; by calling the CIA in an unrelated incident.  He

09:00:09  6   didn't make threats to them.  He had suggestions for them how

09:00:13  7   he was going to solve the problems of the world.

09:00:15  8            This man has no criminal history whatsoever, Your

09:00:19  9   Honor.  This incident was, in my opinion at least, a mental

09:00:24  10  breakdown.  I think that's borne out by the evaluations that

09:00:30  11  he gave.  He's not crazy.  He just sometimes, like all of

09:00:36  12  us, has it up to here (indicating) and he flipped out.  But

09:00:40  13  what he did on that was make a phone call to the White House

09:00:44  14  comment line, and make a fool of himself and ruin his own

09:00:48  15  life by making these meaningless threats that nobody, nobody

09:00:52  16  believes he's ever going to act out on.

09:00:55  17           So, that's why we're asking the Court to consider

09:00:58  18  probation, especially in light of the over 11 months that

09:01:01  19  he's already done, and especially in the light of the fact

09:01:04  20  that there are differences of opinions on the Guideline

09:01:08  21  calculation.  And if the Court were to follow the Guidelines

09:01:13  22  and increase his penalty over 500 percent based on acquitted

09:01:19  23  conduct and uncharged conduct, it doesn't follow the

09:01:26  24  Application Note saying it's substantially connected to

09:01:29  25  the instant offense, that would be too much, judge.

23

09:01:34  1          So, that's our position.

09:01:35  2              THE COURT:  All right.  Thank you.

09:01:36  3          Mr. Ford, is there anything you wish to say?

09:01:39  4              DEFENDANT FORD:  Mercy, I guess --

09:01:40  5              THE COURT:  You can just remain seated there.

09:01:42  6  That's fine.

09:01:43  7              DEFENDANT FORD:  Just mercy.

09:01:47  8              THE COURT:  Are you taking medication now?

09:01:49  9              DEFENDANT FORD:  Uh, no, sir.  Right now, I'm

09:01:52  10  not because the, the Washoe County Jail doesn't have me on

09:01:56  11  anything.  Once I go back to the VA, they'll put me back on

09:02:00  12  all the medication, I guess.

09:02:01  13              THE COURT:  Okay.  Thank you.

09:02:02  14          Mr. Sullivan.

09:02:03  15          MR. SULLIVAN:  Your Honor, I'll start with the

09:02:07  16  application of the Guidelines and the two sections that the

09:02:11  17  defendant has objected to the increases.

09:02:13  18          First of all, before I do that, I would state

09:02:16  19  that you are correct, Mr. Cameron's invocation of 2A6.1(b)(6)

09:02:26  20  is untimely.  And I agree with the Probation Officer's

09:02:31  21  assessment, it doesn't apply.  It is a two-prong approach, but

09:02:36  22  you have to meet everything that's stated therein, and nobody

09:02:39  23  has briefed this, and I would respectfully request the Court

09:02:43  24  not to consider that.

09:02:44  25          We have already submitted in our response to the

24

| | | |
|---|---|---|
| 09:02:49 | 1 | Sentencing Memo our reason why the two levels should apply |
| 09:02:55 | 2 | for more than two threats.  As the Court has noted during |
| 09:03:00 | 3 | this hearing, if the Court considers just the calls -- and |
| 09:03:04 | 4 | there were two calls that he made to the White House, he |
| 09:03:08 | 5 | called back about 20 minutes later after the first call -- |
| 09:03:13 | 6 | that there is threats against the President.  There's threats |
| 09:03:19 | 7 | that he made directly to the White House operator.  And then, |
| 09:03:26 | 8 | of course, against Hillary Clinton.  There's three, as the |
| 09:03:29 | 9 | Court has indicated. |
| 09:03:30 | 10 | But this case, the fact -- |
| 09:03:34 | 11 | THE COURT:  Well, those, what you characterize |
| 09:03:37 | 12 | as a threat -- well, first of all, we clearly have a verdict |
| 09:03:40 | 13 | from the jury.  That doesn't end the inquiry, but the jury |
| 09:03:43 | 14 | found him not guilty of the offense as to the operator. |
| 09:03:47 | 15 | MR. SULLIVAN:  Right. |
| 09:03:47 | 16 | THE COURT:  Clearly, that was a very unusual and |
| 09:03:50 | 17 | strange and amorphous type of statement that he made as far as |
| 09:03:54 | 18 | the operator is concerned. |
| 09:03:56 | 19 | MR. SULLIVAN:  Well -- |
| 09:03:57 | 20 | THE COURT:  And as far as Secretary Clinton was |
| 09:04:00 | 21 | concerned too.  I -- |
| 09:04:02 | 22 | MR. SULLIVAN:  I agree, Your Honor.  And I -- |
| 09:04:04 | 23 | THE COURT:  -- it's not a direct threat to her, |
| 09:04:06 | 24 | it was just -- |
| 09:04:06 | 25 | MR. SULLIVAN:  Well, it was a direct threat to |

09:04:08   1   her.  I mean --

09:04:08   2                   THE COURT:  Well, and it --

09:04:08   3                   MR. SULLIVAN:  -- how do you get around, "I'm

09:04:10   4   going to kill you, bitch.  I'm going to kill --"

09:04:13   5                   THE COURT:  No, he didn't say that about

09:04:14   6   Hillary Clinton.

09:04:16   7                   MR. SULLIVAN:  Oh, no, not about her.  No.

09:04:19   8           But, my point is that this is not just a one shot

09:04:24   9   deal, you know.  He persisted in calling the White House.  And

09:04:28  10   the fact that he called the FBI on the same day, I think, is

09:04:35  11   relevant and is connected.  He is lashing out against the

09:04:39  12   government in general.  He makes some pretty graphic threats

09:04:44  13   that are outlined in the PSR.  He called the FBI over 20,

09:04:50  14   20 times, and made various threats, including grade school

09:04:56  15   children, how he was going to fill up balloons with ammonia

09:05:00  16   and bleach, and he was going to ram a truck and kill all

09:05:04  17   these kids.  They are very graphic threats.  This is not

09:05:06  18   something that was of very little deliberation or just a

09:05:09  19   single instance.  He is calling and calling and calling

09:05:15  20   numerous times on this date in question.  And I think we've

09:05:21  21   laid out -- well, the Probation Officer has laid out in his

09:05:26  22   report the reason why the Court should increase his offense

09:05:29  23   level by two levels for making more than two threats.

09:05:34  24           As far as the obstruction goes, Your Honor, yes,

09:05:38  25   the jury did acquit him on the count against the White House

| | | |
|---|---|---|
| 09:05:42 | 1 | operator.  As I've indicated in the government's response from |
| 09:05:46 | 2 | a case, we don't know why juries do things.  We -- it's hard |
| 09:05:51 | 3 | to know why they do things.  They maybe bought, as Mr. Cameron |
| 09:05:58 | 4 | said, his argument that, basically, all of his venom was |
| 09:06:01 | 5 | directed towards the President.  But as I just stated, it's |
| 09:06:05 | 6 | very clear that he's threatening this woman.  And, it's |
| 09:06:09 | 7 | very clear, under the law, that it doesn't matter that he |
| 09:06:14 | 8 | was acquitted.  The Court can still consider that.  And as a |
| 09:06:18 | 9 | matter of fact, as I've stated in the response, and stated |
| 09:06:22 | 10 | the statute says, there's nothing -- the Court can consider |
| 09:06:25 | 11 | anything when trying to fashion the appropriate sentence in |
| 09:06:29 | 12 | this particular case. |
| 09:06:33 | 13 | We -- and my recollection was along the lines of |
| 09:06:38 | 14 | what you stated earlier, Your Honor, that he very clearly |
| 09:06:41 | 15 | denied making those threats, even though two witnesses |
| 09:06:46 | 16 | during the trial, the case agent, who is seated here with me, |
| 09:06:51 | 17 | George Chertis, stated very, unequivocally, that he admitted |
| 09:06:58 | 18 | making those threats.  He even admitted calling the FBI.  He |
| 09:07:01 | 19 | wouldn't answer when asked about the specific threats.  But, |
| 09:07:05 | 20 | not only did I have George -- I would have put all five |
| 09:07:08 | 21 | witnesses on, but I knew that after two, you probably would |
| 09:07:11 | 22 | have cut me off.  But, there are three other witnesses that |
| 09:07:14 | 23 | would so testify, law enforcement officers, that he admitted |
| 09:07:18 | 24 | making those threats. |
| 09:07:19 | 25 | And, of course, who is the person that has a lot to |

09:07:24  1  gain here by lying?

09:07:25  2          The defendant does, of course, by denying that he

09:07:28  3  did that.

09:07:30  4          And I think that the obstruction of justice does

09:07:32  5  apply.  He's trying to wriggle out here.  He has not accepted

09:07:37  6  responsibility at all.  I don't see that anywhere in the PSR

09:07:41  7  where, you know what, this was really a stupid thing for me to

09:07:45  8  do.  I'm sorry that I did this.  I don't see any of that.  I

09:07:48  9  didn't hear any of that from him just now.  He's just begging

09:07:53  10  the Court for mercy.

09:07:56  11          And I think defense counsel's characterization that,

09:08:01  12  oh, well, this is a big 500 percent increase, well, that's

09:08:06  13  not what's going on here.  The Probation Officer has very

09:08:10  14  carefully analyzed the Guidelines.  We all know, of course,

09:08:14  15  they're not binding on the Court.  But, it is -- the Court is

09:08:17  16  required to consider them, and I think they should be given

09:08:22  17  strong weight here because --

09:08:23  18          THE COURT:  Well, I guess one of my major

09:08:26  19  concerns here is on paragraph 20, a six-level increase, when,

09:08:30  20  normally, it would be a three-level increase in connection

09:08:33  21  with a threat against a government officer; in this case, you

09:08:37  22  know, the President of the United States.  I am having trouble

09:08:41  23  understanding why it's a six-level instead of a three-level

09:08:45  24  increase.

09:08:46  25          MR. SULLIVAN:  Okay.  You're looking at

09:08:48  1   paragraph 20, which refers to the -- I'm just trying to find

09:08:53  2   out which section of the Guidelines -- oh, 3A1.2(b).  Well,

09:09:02  3   let me look at that, Your Honor.

09:09:03  4              THE COURT:  What's the Department's rationale

09:09:05  5   on that?

09:09:06  6              PROBATION OFFICER:  Your Honor, if the Court

09:09:07  7   would take a look at the Application Note 3A1.2, it directs

09:09:11  8   the Court to apply the greatest increase --

09:09:14  9              THE COURT:  Yeah.

09:09:14  10             PROBATION OFFICER:  -- under that.  Without

09:09:16  11  checking my book, which --

09:09:19  12             THE COURT:  Go ahead and take it here.

09:09:23  13             PROBATION OFFICER:  Thank you.

09:09:38  14             THE COURT:  I mean you have in this case,

09:09:39  15  essentially what it was, it was a threat against the

09:09:42  16  President, and then there were collateral statements made

09:09:44  17  that I think may well constitute threats.  And I may well

09:09:47  18  find that there's an appropriate basis for the two-level

09:09:50  19  enhancement on that, both with respect to the statements

09:09:55  20  as to the FBI, grade school children, against Hillary Clinton,

09:10:03  21  and also the operator, certainly would be more than one

09:10:07  22  individual and more than the two that are required.  But, it

09:10:12  23  seems to me it's Draconian then to also add six levels under

09:10:17  24  paragraph 20.  I can see three because it was a threat against

09:10:25  25  a government officer, which is the President of the United

| | | |
|---|---|---|
| 09:10:27 | 1 | States, and that's what he was convicted of. |
| 09:10:52 | 2 | Go ahead with your arguments while we're doing |
| 09:10:54 | 3 | this. |
| 09:10:54 | 4 | MR. SULLIVAN:  Okay.  Well, my answer to that |
| 09:10:56 | 5 | question, Your Honor, with respect to 3A1.2 is that there |
| 09:10:59 | 6 | is an entire section of the Guidelines entitled, "Official |
| 09:11:03 | 7 | Victim."  And what I think the Sentencing Commission had in |
| 09:11:06 | 8 | mind here is we need to increase the penalties where somebody |
| 09:11:10 | 9 | calls up and does something like this, and threatens and |
| 09:11:15 | 10 | interrupts the government.  This is serious business. |
| 09:11:18 | 11 | THE COURT:  Yeah, that's the three-level |
| 09:11:20 | 12 | increase. |
| 09:11:20 | 13 | MR. SULLIVAN:  Right.  But then you go down to |
| 09:11:22 | 14 | (b), and they say (a)(1) and (a)(2) apply, then raise it up to |
| 09:11:26 | 15 | six.  And they do.  And that's why the Probation Officer did |
| 09:11:29 | 16 | that. |
| 09:11:29 | 17 | THE COURT:  And (a)(1) is what? |
| 09:11:31 | 18 | MR. SULLIVAN:  (A)(1) is "if the victim was a |
| 09:11:33 | 19 | government officer or employee," which -- |
| 09:11:34 | 20 | THE COURT:  All right. |
| 09:11:35 | 21 | MR. SULLIVAN:  -- the operator and President |
| 09:11:38 | 22 | are.  And then (2), "the offense of conviction was motivated |
| 09:11:43 | 23 | by such status."  It's, clearly, that it was.  He not only |
| 09:11:48 | 24 | called twice, at least, to the off -- to the White House.  He |
| 09:11:52 | 25 | also called other government agencies, specifically as we've |

09:11:55  1    been talking about here, the FBI.  He was really after the

09:12:01  2    government.  So, I think it's clear that the Probation Officer

09:12:04  3    has correctly applied 3A1.2(a) and (b).

09:12:13  4                    THE COURT:  I think you would have to say this

09:12:14  5    is a fairly unusual case.

09:12:16  6                    MR. SULLIVAN:  Well, Your Honor, what concerns

09:12:18  7    me is what concerns the Probation Officer.  You know, at the

09:12:23  8    end, when he is assessing what kind of recommendation he wants

09:12:27  9    to make to the Court based on everything that -- reviewing the

09:12:32  10   whole picture here, you know, based on the extremely graphic

09:12:36  11   nature -- you know, this wasn't just a threat, hey, I'm going

09:12:40  12   to kill you, and, uh, I don't like you, and I -- you're going

09:12:44  13   to be killed.

09:12:45  14                   THE COURT:  There, certainly, was no intent to

09:12:47  15   carry out the threat -- and that's not required -- but there

09:12:50  16   certainly isn't anything that satisfies me on that in this

09:12:55  17   case.

09:12:55  18         And the second, I suppose, mitigating factor is

09:12:58  19   the fact that he was under the influence of both drugs

09:13:01  20   and alcohol; and, he was hospitalized almost immediately

09:13:04  21   thereafter and not released for a week period of time because

09:13:10  22   of his mental aberration, the problems that he had with the

09:13:15  23   mental condition that he had.

09:13:17  24                   MR. SULLIVAN:  But --

09:13:17  25                   THE COURT:  And I understand all of that.

09:13:20  1   Certainly, he was not going to carry this threat out under

09:13:24  2   the circumstances in which he made these calls.  On the other

09:13:29  3   hand, the Court is very troubled about something like this.

09:13:33  4   A person in that state, if he were in a position to carry

09:13:37  5   out the threat, might well do it, and the Court has to be very

09:13:40  6   concerned about that.

09:13:41  7          Go ahead.

09:13:43  8          MR. SULLIVAN:  Well, and what I was going to

09:13:44  9   say, Your Honor, is this is not his first rodeo.  He was

09:13:47  10  visited in 2010, as the Probation Officer has pointed out,

09:13:51  11  by the Secret Service for similar activity.  He wasn't

09:13:54  12  arrested then, but, you know, when some federal agents come

09:13:59  13  out and talk to you about making noise about threatening the

09:14:02  14  President, you know, that should put the fear of God into

09:14:06  15  somebody.  But, no.  Later, he goes ahead and makes more

09:14:09  16  specific threats and he winds up getting charged.

09:14:12  17         But what is also concerning to the government

09:14:14  18  is, yes, he did self-admit himself the next day to the VA

09:14:20  19  hospital, the way I understand it.  But at the very end,

09:14:23  20  when he's, when he's going to be released, he makes the

09:14:26  21  statement to the doctors that he, well, I guess I'm going to

09:14:31  22  continue harassing the government, but I'll take it down a

09:14:35  23  couple of notches.

09:14:37  24         So, I mean, he's not repentant.  He's not sorry.

09:14:40  25  Oh, my gosh, what did I do?  And like I said earlier, even

09:14:44   1   during this proceeding, during this trial, and during this

09:14:46   2   sentencing proceeding, he's not coming in with any type of

09:14:49   3   remorse for what he did, accepting responsibility for what he

09:14:53   4   did.

09:14:53   5          For all of the reasons that the Probation Officer

09:14:55   6   has put in his PSR, I think we need to incapacitate this

09:15:00   7   defendant and give him the 51 months that the Probation

09:15:04   8   Officer is recommending.  Maybe while he's in prison, maybe

09:15:08   9   he will think about this and it will remind him that, you

09:15:12  10   know, even if you're feeling down and out, you can't just

09:15:15  11   call up a bunch of federal agencies, including the White

09:15:19  12   House, and threaten to kill them.

09:15:21  13          Thank you.

09:15:21  14          THE COURT:  Okay.  Thank you.

09:15:25  15          Do you have any --

09:15:25  16          PROBATION OFFICER:  Your Honor --

09:15:25  17          THE COURT:  Yes.  I'm sorry.  Go ahead.

09:15:27  18          PROBATION OFFICER:  -- just to clarify on the

09:15:29  19   six-level increase, it is the Probation Office's position

09:15:31  20   that the Sentencing Commission, under that two-level increase,

09:15:35  21   their intent was to increase the penalty for any offense that

09:15:40  22   occurred under (2)(a), that is evident by that, as opposed

09:15:44  23   to if the offense was, say, under the robbery Guidelines, that

09:15:49  24   increase would not apply.

09:15:50  25          So, any crime against a person which is covered

33

09:15:52  1   under the (2)(a) Guideline, the Sentencing Commission sought

09:15:55  2   to increase those penalties by a six-level increase.  We would

09:15:59  3   have been remiss not to apply that because that is exactly

09:16:02  4   what --

09:16:02  5          THE COURT:  The "person," and in this case was

09:16:04  6   the government official?

09:16:05  7          PROBATION OFFICER:  Correct.

09:16:06  8          THE COURT:  All right.  Thank you.

09:16:07  9       Do you have any legal cause to show why judgment

09:16:11  10  should not now be pronounced?

09:16:13  11         MR. CAMERON:  I do not, Your Honor.  I would

09:16:15  12  just like to make two corrections.

09:16:16  13      The government has, and they have a right to do

09:16:18  14  this, argued to the Court that he hasn't shown any remorse.

09:16:22  15  Well, he's still in a situation as to decide whether or not

09:16:26  16  there will be any appeal in this case.  So, I don't think that

09:16:29  17  it's incumbent upon him to do that at this time --

09:16:32  18         THE COURT:  No, I understand that.

09:16:33  19         MR. CAMERON:  -- even if he feels that.

09:16:34  20         THE COURT:  I understand that.  And I'm

09:16:35  21  certainly not holding that against him.

09:16:38  22         MR. CAMERON:  The other point I was going to

09:16:39  23  make, Your Honor, is this has all been, thus far, mostly an

09:16:44  24  argument about the Guidelines.  Our position, quite simply,

09:16:48  25  is that the Guidelines don't fit the unique circumstances of

09:16:51  1   this case.  And we've articulated to the Court as to why we

09:16:55  2   feel that.  There hasn't been a lot of response from the

09:16:58  3   government to that particular issue.

09:17:00  4          And we'll stand on our Sentencing Memorandum and

09:17:02  5   submit it.  And theres no reason that I know of that he

09:17:05  6   shouldn't be sentenced.

09:17:07  7          THE COURT:  All right.  Hearing no reason, and

09:17:08  8   based upon the jury's verdict finding the defendant guilty

09:17:12  9   of Count One, a threat against the President of the United

09:17:15  10  States, a violation of Title 18 U.S. Code, Section 871(a),

09:17:19  11  the Court does now find the defendant guilty of that offense.

09:17:22  12         I've carefully considered the Presentence Report,

09:17:27  13  together with the Guidelines in this case.  And first I'll

09:17:30  14  address the Guidelines, and then I'll discuss the factors

09:17:34  15  under 3553(a).

09:17:35  16         Under the Guidelines, the base offense level is

09:17:37  17  properly calculated at 12.  There has been an objection to

09:17:44  18  the two-level, proposed two-level enhancement for multiple

09:17:49  19  threats.  In this case, the Court finds that by a

09:17:53  20  preponderance of the evidence that there was a threat made

09:17:55  21  against the operator who answered the telephone.  She

09:18:03  22  testified here.  I observed her.  I listened carefully to

09:18:07  23  what she had to say.  And the language that was used was

09:18:10  24  clearly directed, at least in part, against her.  And the

09:18:15  25  language that was used was clearly a threat against her.  And

09:18:19  1    the record is quite clear about that.

09:18:21  2           In addition, he did make a threat against

09:18:27  3    Ms. Clinton.  And he also, ultimately, made threats against

09:18:36  4    FBI agents and school children, all in the context of evidence

09:18:43  5    that the Court may consider in connection -- you may all be

09:18:46  6    seated.  This is going to take a minute or two -- all in the

09:18:49  7    context of the facts surrounding this case.

09:18:54  8           He spoke, very shortly afterwards, with FBI agents

09:18:58  9    who came to investigate.  He made telephone calls to the FBI

09:19:02  10   agents.  He did make threats to the FBI agents.  And that's

09:19:06  11   clearly documented in the evidence that's been presented to

09:19:10  12   the Court and, therefore, the Court finds that there were more

09:19:13  13   than two threats, which would count under the Guidelines in

09:19:18  14   terms of the two-level enhancement properly calculated by the

09:19:22  15   Department.

09:19:22  16          Under the victim-related adjustment, again, there

09:19:27  17   is no question that the President of the United States, an

09:19:30  18   employee of the United States, and the multiple threats that

09:19:35  19   were made, the Department has properly calculated that

09:19:39  20   there should be a six-level increase in connection with

09:19:43  21   the provisions under 3A1.2(b) and 3A1.2(a)(1) and (2) apply.

09:19:53  22   The victim was a government officer, employee, and the offense

09:19:55  23   of conviction was motivated by that statute.  I mean, that's

09:19:59  24   clear from the language that was used.  That was the basis on

09:20:03  25   which this call was made, at least there were two calls made

09:20:06   1   to the White House in connection with the threat that was

09:20:10   2   made, and specifically against the President, in which he

09:20:14   3   was found guilty by the jury in this case.

09:20:16   4        The difficult issue, the other difficult issue is

09:20:20   5   the one involving the obstruction of justice.  While the Court

09:20:28   6   believes that it's a close question, I think, on balance,

09:20:32   7   the Court would conclude that the defendant did not obstruct

09:20:35   8   justice in this case.  Virtually all of the answers that he

09:20:40   9   gave in connection with the testimony that he gave here was

09:20:43   10  that he didn't recall, and that may or may not be true.  I

09:20:49   11  think it was a somewhat motivating factor in connection with

09:20:53   12  what the jury did in connection with their verdict, although

09:20:56   13  you have no way of knowing that for sure in connection with

09:20:58   14  the conviction and acquittal on the two different counts, one

09:21:02   15  conviction and the one acquittal.

09:21:04   16       There is no question in the Court's mind that the

09:21:08   17  defendant was under the influence of both drugs and alcohol

09:21:11   18  that severely impaired his functioning process at that time

09:21:15   19  and for some days after, including the days that he met with

09:21:19   20  the FBI agents.

09:21:20   21       There is no question when the Court looks at the

09:21:23   22  psychological evaluations and the records at the VA hospital

09:21:28   23  where he was admitted shortly after that, that he was

09:21:31   24  suffering from a fairly substantial mental disorder.  It

09:21:35   25  doesn't mitigate against the crime that he committed here,

09:21:38  1    but it certainly is a factor that the Court takes into

09:21:40  2    consideration as to whether or not he was honest when he

09:21:44  3    said he didn't recall much about those telephone calls.

09:21:46  4         There was one section of the transcript that gave

09:21:51  5    the Court pause because he responded, "Yes, I am," in

09:21:56  6    connection with whether or not he is denying making the

09:22:00  7    threats.  With respect to everything else he responded to,

09:22:02  8    it was that he didn't recall; he wasn't sure; had, at the

09:22:10  9    current time, no knowledge of the threats.  And, there

09:22:13  10   certainly is fairly substantial evidence in the record

09:22:16  11   that would support a finding that he was severely impaired

09:22:19  12   at the time that he made these threats.  Again, that doesn't

09:22:24  13   mitigate against the conviction in this case, but it satisfies

09:22:27  14   the Court that the two-level adjustment for obstruction of

09:22:31  15   justice should not apply in this case.

09:22:34  16        Based upon this, the adjusted offense level is 20.

09:22:37  17   Total offense level in this case is 20.  And the defendant

09:22:39  18   falls in a category one under criminal history.  He has no

09:22:43  19   prior criminal history that counts.  And based upon that

09:22:46  20   finding, the Guideline range is 33 to 41 months.

09:22:51  21        Now, the Court has carefully examined the

09:22:55  22   provisions under 3553(a) of Title 18 of the United States

09:23:00  23   Code:  The nature and circumstances of the offense; history

09:23:03  24   and characteristics of the defendant.

09:23:04  25        Now, there's no question in my mind that one of

09:23:09  1   the most serious offenses that can be committed in this

09:23:13  2   country is a true threat against the President of the United

09:23:19  3   States.  There is absolutely no basis on granting any form

09:23:25  4   of leniency in connection with someone who makes a threat.

09:23:30  5   The jury found, and there is evidence to support the jury's

09:23:33  6   finding in this case that the defendant made a threat against

09:23:36  7   the President of the United States, and that each of the

09:23:39  8   elements of that crime were established beyond a reasonable

09:23:44  9   doubt and support the jury's verdict.

09:23:46  10          To reflect the seriousness of the offense and to

09:23:49  11  promote respect for the law and provide just punishment,

09:23:52  12  because of the seriousness of the offense, a period of

09:23:55  13  incarceration, in the opinion of the Court, is required in

09:23:58  14  this case.  Hopefully, that will deter others similarly

09:24:03  15  situated who may think that they can do as the defendant

09:24:06  16  did here, and escape any type of consequences for it.

09:24:12  17  And, hopefully, this would deter the defendant from future

09:24:15  18  misconduct.

09:24:15  19          Also, to protect the public from further crimes of

09:24:18  20  the defendant, a period of incarceration is imperative in

09:24:24  21  this case.  Hopefully, the defendant can receive the medical

09:24:27  22  care that he, I think, needs, during any period that he's

09:24:31  23  incarcerated.  He's already been incarcerated almost, I

09:24:35  24  believe it's close to a year now.  And, hopefully, he can

09:24:40  25  receive, in the federal institution, the type of medical

09:24:46  1    care that he needs.  And that's an important condition in

09:24:51  2    connection with supervised release in this case.

09:24:52  3            For all of these reasons, the Court believes that

09:24:54  4    a sentence within the Guideline range as determined by the

09:24:57  5    Court, which is 33 to 41 months, is appropriate.

09:25:00  6            It will be the order and judgment of the Court

09:25:02  7    that the defendant is committed to the custody of the Bureau

09:25:06  8    of Prisons for a term of three years, which is 36 months.

09:25:09  9            No fine is imposed.  The defendant does not have

09:25:11  10   the ability to pay a fine.

09:25:13  11           The mandatory penalty assessment of $100 is imposed

09:25:16  12   and will be due and payable immediately.

09:25:18  13           The defendant is placed on supervised release upon

09:25:24  14   his release from custody for a term of three years.  You will

09:25:27  15   comply with the standard conditions of supervision recommended

09:25:30  16   by the Sentencing Commission.

09:25:32  17           And if you could provide a copy of those conditions

09:25:35  18   to the defendant.

09:25:35  19           (Document given to the defendant.)

09:25:41  20               THE COURT:  Do you acknowledge receipt of a copy

09:25:42  21   of those?

09:25:43  22               MR. CAMERON:  We do, Your Honor.

09:25:44  23               THE COURT:  In addition, the defendant will be

09:25:46  24   subject to the following mandatory conditions:

09:25:48  25           You'll not commit another federal, state, or local

09:25:51  1   crime during the period of supervised release.

09:25:55  2          You'll not have in your possession any type of

09:26:00  3   controlled substance or any form of alcohol.  You must refrain

09:26:04  4   from the unlawful use of a controlled substance and submit to

09:26:07  5   one drug test within 15 days of release from imprisonment, and

09:26:11  6   at least two periodic drug tests thereafter as determined by

09:26:15  7   the Court, not to exceed 104 drug tests annually.

09:26:19  8          And that's an important condition here.  I'm

09:26:21  9   absolutely satisfied that you wouldn't be sitting in front

09:26:24  10  of this court if you hadn't been using drugs and alcohol.

09:26:29  11  And, you know, if on supervised release, if you come back

09:26:33  12  before this court and you're on drugs or you're on alcohol,

09:26:37  13  that's going to be a straight line to going back into custody

09:26:43  14  because that, I think, is what precipitated everything that

09:26:46  15  occurred here.

09:26:47  16         You must cooperate in the collection of DNA as

09:26:50  17  directed by the Probation Office.

09:26:51  18         You must pay any assessment -- well, I'm not going

09:26:54  19  to impose an assessment.  You don't have the ability to pay.

09:26:58  20         And I might add in this sentence that I've imposed,

09:27:02  21  which is within the Guideline range, but not at the highest

09:27:07  22  end, I've taken into consideration your services to the United

09:27:10  23  States.  I've taken into consideration the mental state that

09:27:15  24  you've suffered as a result of your services to the United

09:27:19  25  States, and that was a mitigating factor that the Court has

41

09:27:22  1   considered.

09:27:22  2         The Court also will impose the following special

09:27:25  3   conditions:

09:27:25  4         You'll not have contact, directly or indirectly,

09:27:29  5   with any victim or witness in the instant offense unless under

09:27:33  6   the supervision of the Probation Office.

09:27:36  7         Importantly, you'll participate in and successfully

09:27:38  8   complete a mental health treatment program that would include

09:27:43  9   testing, evaluation, outpatient counseling, as approved and

09:27:47  10  directed by the Probation Office.

09:27:48  11        You'll refrain from the use and possession of any

09:27:50  12  type of alcohol.

09:27:51  13        And you'll participate, as I indicated, in that

09:27:55  14  mental health treatment.  You'll be required to contribute to

09:27:59  15  the costs.  And, again, that's based on your ability to pay.

09:28:02  16  And you, quite clearly, do not have the ability to pay.

09:28:06  17        You'll also not possess or have under your control

09:28:08  18  or have access to any firearms, explosive devices, or other

09:28:13  19  dangerous weapons as defined by federal, state, or local law.

09:28:15  20        And I might indicate in here there wasn't any

09:28:17  21  evidence in this case that the defendant had any ability to

09:28:20  22  carry out any threat that he made, and that's an important

09:28:23  23  factor that the Court considered in deciding whether or not

09:28:27  24  the sentence that I'm imposing is an appropriate sentence.

09:28:32  25  Had the defendant had the ability to carry out the threat,

09:28:35  1    had he had weapons at his disposal, something of that nature,

09:28:40  2    or proximity, the sentence would have been substantially

09:28:45  3    different than this was.  And, I'm sure the recommendations

09:28:47  4    would have been different than they were.

09:28:49  5            You will use your true name at all times.  You

09:28:51  6    will be prohibited from the use of any aliases, false dates

09:28:52  7    of birth, social security numbers, or any other pertinent

09:28:56  8    demographic information.

09:28:57  9            You'll also submit to search of your person,

09:29:00  10   property, residence, or automobile under your control by the

09:29:02  11   Probation Officer, or any other authorized person under the

09:29:05  12   immediate and personal supervision of the Probation Officer,

09:29:08  13   without a search warrant, to ensure compliance with conditions

09:29:11  14   of release.

09:29:12  15           And I have to say that, again, on supervised

09:29:16  16   release, if the officers come out to conduct a search, you

09:29:18  17   have to let them conduct the search.  And if you obstruct

09:29:22  18   them, you're going to be back in this courtroom and you're

09:29:25  19   going to be going back to prison.  It's as simple as that.

09:29:27  20           You'll also participate in and successfully complete

09:29:30  21   a substance abuse treatment program.  And that's extremely

09:29:33  22   important.  That would include drug and alcohol testing,

09:29:36  23   outpatient counseling as approved and directed by the

09:29:39  24   Probation Office.  And if you have the ability to pay, you

09:29:43  25   would contribute to the cost.

43

09:29:45  1            And, you'll refrain from the use of any type of

09:29:47  2    alcohol, as I've indicated.

09:29:48  3            I think as long as you take medication, as long

09:29:52  4    as you continue to, once you're released and under supervised

09:29:57  5    release have contact with the Veterans Administration

09:30:00  6    Hospital, and take the medication that they prescribed for

09:30:03  7    you, I would anticipate that you're not going to be in trouble

09:30:07  8    again.

09:30:08  9            On the other hand, if you don't, there may well

09:30:10  10   be a basis for violation at some of future time.  And if that

09:30:14  11   happens, the Court will have very few options other than to

09:30:20  12   put you back in custody.  So, that's where we are.

09:30:22  13           I would advise the defendant that you have the

09:30:24  14   right to file a Notice of Appeal in connection with this

09:30:28  15   judgment  of the Court.  That would have to be filed in

09:30:32  16   writing within 14 days of today's date.  I'll go ahead and

09:30:36  17   appoint  Mr. Cameron, if he accepts the appointment, to

09:30:39  18   represent you up until that 14-day period, at least, to

09:30:43  19   determine whether or not you want to file that Notice of

09:30:45  20   Appeal.  And if you do file a Notice of Appeal, then

09:30:50  21   Mr. Cameron would be appointed, if he accepts the

09:30:53  22   appointment --

09:30:53  23           MR. CAMERON:  Your Honor, in that regard, I

09:30:55  24   would be happy to file any Notice of Appeal if he decides

09:30:59  25   there is going to be an appeal.

09:31:00  1           THE COURT:  All right.

09:31:00  2           MR. CAMERON:  I don't feel that I would be the

09:31:03  3  person that should go forward on this appeal.  I've tried it.

09:31:08  4  I've given it every effort I have.  I don't have a lot of

09:31:10  5  disagreement with the Court's rulings in this case.  It might

09:31:13  6  be safer to have somebody with a new set of eyes take a look

09:31:17  7  at it.

09:31:17  8           THE COURT:  Yeah, that's fine then.  I'm going

09:31:19  9  to appoint you to at least remain on as attorney for the

09:31:25  10  defendant for purposes of filing any Notice of Appeal, if

09:31:28  11  he elects to do that.  If a Notice of Appeal is filed, then

09:31:32  12  I will immediately refer this to the Clerk's Office for the

09:31:37  13  appointment of new counsel from the CJA panel.

09:31:41  14           MR. CAMERON:  Thank you, Your Honor.  I

09:31:42  15  appreciate that.

09:31:42  16           THE COURT:  They would handle the appellate

09:31:44  17  aspect of it.

09:31:44  18           All right.  That's fine.  I think that's all I have.

09:31:46  19           Anything else on behalf of the government?

09:31:48  20           MR. SULLIVAN:  No, Your Honor.

09:31:48  21           THE COURT:  Anything from the defendant?

09:31:49  22           MR. CAMERON:  Your Honor, if I could have the

09:31:50  23  Court's indulgence one second.

09:31:50  24           (Counsel and defendant confer.)

09:32:13  25           MR. CAMERON:  Your Honor, just two things I

09:32:14  1  would like to ask the Court for.  He's not been convicted of

09:32:19  2  a drug crime, but I think as the Court pointed out, drug use

09:32:22  3  has a significant impact on why this crime took place.  So, I

09:32:26  4  would ask for a recommendation to the RDAP Program while he's

09:32:30  5  incarcerated.

09:32:31  6          THE COURT:  That will be the strong

09:32:32  7  recommendation of the Court.  Of course, the Department is

09:32:34  8  going to make that determination independent of anything I

09:32:37  9  say, but I would make that strong recommendation.

09:32:40  10          MR. CAMERON:  Additionally, Your Honor, we

09:32:42  11  would like to look at a placement somewhere in Phoenix.

09:32:45  12          DEFENDANT FORD:  Or a camp, some place like a

09:32:48  13  camp.

09:32:48  14          MR. CAMERON:  Well, they make that

09:32:50  15  determination --

09:32:50  16          THE COURT:  Yes.  I would make that

09:32:51  17  recommendation that he be placed in a facility in Arizona --

09:32:55  18  is that what you're asking, in the Phoenix area?

09:32:57  19          DEFENDANT FORD:  No, I mean, I guess Washington

09:32:59  20  State.

09:32:59  21          MR. CAMERON:  Okay.

09:33:00  22          DEFENDANT FORD:  I have no idea where the places

09:33:02  23  are at.

09:33:03  24          MR. CAMERON:  Your Honor, he wants something --

09:33:05  25  let's say Washington.  I don't think he understands that,

09:33:08  1   exactly, his determinations as to when he goes to camp, when

09:33:11  2   he's eligible -- and I think he is eligible -- are all made

09:33:16  3   by the Bureau of Prisons, so that will be down the line and a

09:33:19  4   decision this court doesn't get to make.  But, they'll make it

09:33:20  5   based on the conviction.

09:33:21  6            DEFENDANT FORD:  Okay.

09:33:22  7            THE COURT:  So I'll make the recommendation that

09:33:25  8   if he's eligible, that he be in the RDAP Program.

09:33:29  9            MR. CAMERON:  Thank you, Your Honor.

09:33:30  10           THE CLERK:  And Washington State or --

09:33:31  11           THE COURT:  Well, I don't think -- I don't think

09:33:33  12  that's really what he wants.  He wants some type of --

09:33:36  13           DEFENDANT FORD:  Washington State.  I --

09:33:38  14           THE COURT:  I have no problem recommending

09:33:41  15  something in the State of Washington.

09:33:42  16           DEFENDANT FORD:  All right.

09:33:43  17           THE COURT:  All right.  Thank you.

09:33:44  18

          19            (Court Adjourned.)

          20

          21

          22

          23

          24

          25

1                              -o0o-

2

3        I certify that the foregoing is a correct
         transcript from the record of proceedings
4        in the above-entitled matter.

5        \s\ Kathryn M. French              March 27, 2017

6        _____        _____

7        KATHRYN M. FRENCH, RPR, CCR              DATE
         Official Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25