```
 1                  UNITED STATES DISTRICT COURT
                        DISTRICT OF NEVADA
 2          BEFORE THE HONORABLE HOWARD D. McKIBBEN,
                        SENIOR DISTRICT JUDGE
 3
                            --o0o--
 4

 5   UNITED STATES OF AMERICA,: No. 3:16-cr-00016-HDM-WGC
                             :
 6             Plaintiff,    : November 16, 2016
                             :
 7      vs.                  : United States District Court
                             : 400 S. Virginia Street
 8   STEVEN EUGENE FORD,      : Reno, Nevada 89501
                             :
 9             Defendant.    : TRIAL DAY 2
     _____:
10

11

12            TRANSCRIPT OF JURY TRIAL PROCEEDINGS

13

14   A P P E A R A N C E S:

15   FOR THE PLAINTIFF:          BRIAN L. SULLIVAN
                                 Assistant U.S. Attorney
16                               100 W. Liberty Street
                                 Reno, Nevada 89501
17

18   FOR THE DEFENDANT:          DENNIS CAMERON
                                 Attorney at Law
19                               204 Marsh Avenue
                                 Reno, Nevada 89509
20

21

22   Proceedings recorded by mechanical stenography and
     produced by computer-aided transcription
23

24   Reported by:               LORI URMSTON, RPR, RMR, FAPR
                                 NEVADA LICENSE NO. 51
25                               CALIFORNIA LICENSE NO. 3217
```

```
 1   RENO, NEVADA; WEDNESDAY, NOVEMBER 16, 2016; 9:47 A.M.
 2                         --o0o--
 3            (Out of the presence of the jury.)
 4        THE CLERK:  This is the date and time set for the
 5   jury trial, Day 2, in Case No 3:16-cr-16-HDM-WGC,
 6   United States of America versus Steven Eugene Ford.
 7   The defendant is present in custody with counsel,
 8   Dennis Cameron.  Appearing on behalf of the government
 9   is Brian Sullivan.
10        THE COURT:  All right.  Thank you.
11        We've convened outside the presence of the jury.
12   The jurors have sent a note to the court.  I provided
13   you with a copy of it.  And it states:  "Can we get a
14   clarification of the definition of diminished capacity,
15   that being said, what was told to us about making our
16   judgment with that phrase in mind?"
17        First, in connection with the diminished capacity
18   instruction, it's the basic instruction, patterned
19   instruction, of the Ninth Circuit and it's consistent
20   in the opinion of the Court with the case law, both the
21   United States Supreme Court and the Ninth Circuit.  And
22   we discussed all of that prior to giving the
23   instruction.
24        I am inclined to give a clarification instruction
25   to the jury on the diminished capacity so that, you
```

 1   know, it's clear, the scope and extent of it.  I can

 2   see how they might as laypeople wonder what the impact

 3   is as it relates to Counts One and Two.

 4       And the additional instruction I'm giving thought

 5   to -- I haven't, you know, typed it up and given it to

 6   you yet -- is something along the following line, that

 7   intent is a necessary element in both Counts One and

 8   Two of the indictment as described in instructions No.

 9   11 and 12.  As to instruction No. 15, which is the

10   diminished capacity instruction, if you conclude that

11   the government has failed to prove beyond a reasonable

12   doubt that the defendant had the ability to form the

13   intention to threaten the President of the United

14   States and/or the White House operator, or that he

15   acted with the intent to threaten the President and/or

16   the White House telephone operator, then you would

17   return a not guilty verdict.

18       Now, the reason I'm inclined to go with that

19   language is that I think the jurors need to know the

20   consequence of their deliberations and determination

21   with respect to the intent issue.  So that's what I

22   would do.

23       On the other hand, I will tell the jury that in the

24   event they find beyond a reasonable doubt that the

25   government has established each one of the elements

1  under Count One and Count Two as set forth in

2  instructions No. 11 and 12, including the intent

3  element, then their verdict would be for the

4  government, it would be a guilty verdict.  And that's a

5  clarification on both sides of it.

6      So what's the government's position on that?

7      MR. SULLIVAN:  Your Honor, I'm going to reiterate

8  my request.  They need some help.  This instruction,

9  this Ninth Circuit instruction, is not all that clear.

10  And that's why I asked for you to take the language --

11      THE COURT:  Let's tackle what I'm talking about

12  first --

13      MR. SULLIVAN:  Well, no.

14      THE COURT:  -- and then I'll let you expand it into

15  whatever else you think should be put in there.

16      MR. SULLIVAN:  I have no objection to what you've

17  just stated.

18      THE COURT:  Okay.  What about the defense?

19      MR. CAMERON:  Your Honor, I think that states what

20  the issue is in this trial and what we've argued about

21  all day, so I don't have any objection to the language

22  the Court has just announced.

23      THE COURT:  All right.  Let me just finish this

24  then.

25      So let me restate it.  And then I can go ahead and

1   type it up before I bring them back and give it to

2   them.

3       And then I'll address whatever issue you have,

4   Mr. Sullivan.

5       Intent is a necessary -- in responding to the

6   question you posed to the Court, I would advise you as

7   a further instruction, to be included with all the

8   other instructions that I've provided to you, that

9   intent is a necessary element in both Counts One and

10  Two of the indictment.  As described in the

11  instructions under instruction No. 15, if you conclude

12  that the government has failed to prove beyond a

13  reasonable doubt that the defendant had the ability to

14  form the intention to threaten the President of the

15  United States and/or the White House telephone

16  operator, or that he acted with the intent to threaten

17  the President and/or the White House telephone

18  operator, then you would return a not guilty verdict.

19  On the other hand, if you find that the government has

20  proven all of the elements of Count One and Two of the

21  indictment as set forth in instructions 11 and 12,

22  including the intent element, you would return a guilty

23  verdict.  And you will consider this along with all the

24  other instructions.

25      So that's what I would intend to give to them.

```
1    I'll go ahead and get that typed up now.  And then
2    while we're doing that, I'll talk with you about the
3    issue that you wish to discuss.
4        MR. SULLIVAN:  Do you want me to proceed?
5        THE COURT:  Let me just get this to --
6        Do you want to take this in and we'll go ahead and
7    have that typed up and then I'll give it to counsel.
8        Okay.  Go ahead.
9        MR. SULLIVAN:  As I was starting to say, Your
10   Honor, this Ninth Circuit instruction is very brief.  I
11   can kind of understand the fact that they sent out a
12   note.  And that was my point in suggesting and
13   requesting actually the language that I did from the
14   Christian case.  And I'm requesting it again, because
15   even though I don't object to what you're -- the
16   response, it doesn't answer their question.
17       They want some help here.  And I think the
18   Christian case gives them that help from the language
19   that states, "The diminished capacity defense is not
20   cognizable" -- I realize that you could change that
21   word to "available" -- "is not available simply because
22   a criminal defendant may be mentally ill.  Instead, the
23   defense is directly concerned with whether the
24   defendant possessed the ability to attain the culpable
25   state of mind which defines the crime."  I request that
```

1   you add that language at the end of what you've already

2   had typed up.

3      THE COURT:  Yeah, let me pull that case again.  I

4   thought I had it right here.

5      MR. SULLIVAN:  And it's in the file.  It's in --

6   the language that I'm quoting from is from one of my

7   pleadings.  It's document No. 33, if you have the

8   court's file.

9      THE COURT:  Yeah.  I actually have the case too,

10   but I just need to --

11      MR. SULLIVAN:  And I have the citation for the case

12   if you -- and the page number.

13      THE COURT:  Yeah, I have it here.

14      MR. SULLIVAN:  If you have the case, it's on page

15   815.

16      THE COURT:  The problem with what you're suggesting

17   is that that suggests to the jury almost that a person

18   who is mentally ill, that the jury not take that into

19   consideration necessarily in connection with finding

20   diminished capacity, which is not true.  They certainly

21   can take that into consideration, but the fact that

22   they're mentally ill may not always be sufficient to

23   have the diminished capacity instruction, but it may be

24   if it's substantial enough on the issue of intent, that

25   intent couldn't have been formed.  That's the problem I

1  have with it.

2       MR. SULLIVAN:  I have no problem with you

3  expounding on what you just said there, what you just

4  added.  I think the point is that we -- you allowed the

5  defendant to raise this defense.  No real expert

6  testimony was offered by either side to explain stuff

7  that was brought out.  And I think it's only fair that

8  they understand that even though you allowed me to

9  argue it and even though you may have some form of

10  mental illness, it's only -- it only counts if it rises

11  to such a degree that it interferes with your ability

12  to form that intent which is what I think you just

13  said.

14       THE COURT:  I agree with that.

15       MR. SULLIVAN:  That's what I'm asking for.

16       MR. CAMERON:  Your Honor, I would like to be heard

17  as well on that issue.

18       THE COURT:  Go ahead.

19       MR. CAMERON:  And, you know, I understand

20  Mr. Sullivan's desire to have that language added, but

21  that's really what he argued to the jury, and he's had

22  the opportunity to make that argument to them already.

23  The pattern instruction covers what the jury needs to

24  know.  We've made our argument; the government has made

25  theirs.  They had the information.  It's their duty and

1  their province to decide now how that affects his

2  ability to form intent.

3      The fact that there's not an expert called is just

4  a red herring in this case.  The bottom line is the

5  expert is there to assist the jury in maybe making some

6  determinations about the facts.  They have the facts in

7  this case.  And I think the instruction the Court

8  propounded originally covers their question and directs

9  them to go back and look at the facts of the case.

10      THE COURT:  Okay.  Well, let's wait until we have

11  this typed up and then I'll bring it to you and we'll

12  take a look at it.  In the meantime, let me ponder this

13  issue.  So if you want to relax for a few minutes, you

14  may.  I'll probably just work right here.

15      MR. SULLIVAN:  Okay.

16      THE COURT:  Okay.  Paris, do you want to give them

17  these.  We'll start with this.

18      So, again, just on this language -- we'll just deal

19  with this right now.  Intent is a necessary element in

20  both -- I'd just say in Counts One and Two of the

21  indictment.  As to instruction No. 15 -- and there I'll

22  say the diminished capacity instruction -- if you

23  conclude that the government has failed to prove beyond

24  a reasonable doubt that the defendant had the ability

25  to form the intention to threaten the President of the

1  United States and/or the White House telephone
2  operator, or that he acted with the intent to threaten
3  the President of the United States and/or the telephone
4  operator, then you would return a not guilty verdict.
5  On the other hand, if you find that the government has
6  proven all of the elements of Counts One and Two of the
7  indictment as set forth in instructions 11 and 12,
8  including the intent element, you would return a guilty
9  verdict.
10     Now, here's some possible language in connection
11  with the issue that's been raised by Mr. Sullivan.  And
12  this is language which I'm taking from the case and
13  revising it somewhat.  And by "the case" I mean the
14  United States versus Christian case which is 749
15  Federal 3006.
16     Mental illness standing alone is not a basis for
17  finding the defendant not guilty because of diminished
18  capacity.  The issue for you to decide in this case is
19  whether defendant's mental condition and/or state of
20  mind on March 1, 2016, was such that he could or could
21  not form the specific intent to threaten the President
22  of the United States and/or the White House telephone
23  operator.
24     MR. SULLIVAN:  I have no objection and I strongly
25  encourage the Court to add that language.  I think that

1   gives them the direction that they're looking for.

2       THE COURT:  Let me at least type it up here so you

3   can look at what I've said.  I haven't decided what I'm

4   going to do with it yet.

5       And just type it up at the bottom of -- type it up

6   at the bottom of the one that Candace did.  And have

7   her take out "as described in," so it would just read

8   "intent is a necessary element in both Counts One and

9   Two of the indictment."

10      Okay.  Thanks.

11      Okay.  Now, while we're waiting for that, I want to

12  simply make the record in connection with the excuse of

13  juror Ms. Villafana yesterday afternoon at her request

14  that she be excused from jury duty in connection with

15  the Court's determination with respect to good cause

16  under Rule 23 of the Federal Rules of Criminal

17  Procedure.

18      At the time that we received the note -- and I

19  recognize that counsel stipulated to it, but I want the

20  record to reflect this, that at the time that we

21  received the notification from Ms. Villa -- I think

22  it's Villafana -- the jury had been deliberating for

23  approximately 20 minutes.  In other words, by the time

24  they got out, closed the door after they deposited

25  their cell phones and what have you, they had been

1    deliberating for about 20 minutes before I brought them

2    in to see if they wanted to continue in the evening or

3    go home.  And I got her note at the time that they

4    indicated that they in all probability were going to go

5    home and then come back the next day.

6        There is absolutely no evidence from either

7    Ms. Villafana or any of the other jurors that she was

8    in any way a dissenting juror.  No issues were raised

9    by any of the other jurors as to her ability to

10   proceed.  Her expression to the Court was that she was

11   having difficulty with opinions of all of the jurors,

12   not given jurors or specific ones, and participating in

13   the jury process.

14       The record is quite clear that she was having

15   problems with the jury process.  She immediately upon

16   being selected and going to the jury room before the

17   trial evidence started indicated that she had to leave

18   at 3:00 o'clock in the afternoon because they had one

19   car and she had to pick her husband up.  And then at

20   the Court's urging that she reconsider on that, she was

21   able to make other arrangements.

22       She, in addition, was 15 minutes late in coming

23   back from the lunch break.  And that was of concern to

24   the Court, because we had to wait on that.  I had the

25   impression that she was not particularly happy about

1  the fact that the Court was going to have the jury come

2  back, because it was after that admonition to the jury

3  that I preferred to have them come back the next day

4  for deliberations that she would necessarily have to

5  come back the next day for jury deliberations.

6      So all of those factors together, including the

7  very short length of time that the jurors were in

8  there, about 20 minutes, convinced the Court that she

9  was not particularly interested in continuing to

10 participate in this trial and that's the reason she

11 sent the note out to the Court.  And counsel agreed

12 with the Court that it was appropriate to go ahead and

13 dismiss her.  And we did have the two alternates still

14 standing by here.

15     And then the other alternate was instructed along

16 with the rest of the jurors that the jury had to start

17 their deliberations anew, which would have been to

18 discuss whatever they may or may not have discussed,

19 whether it was just preliminary things in connection

20 with selecting a foreperson or what during that

21 20-minute period that they had been out.

22     So for all of those reasons the Court believes that

23 there was good cause to excuse Ms. Villafana and that

24 there was no basis for any conclusion in this case that

25 it was because of some conflict she had with one or

1 more of the jurors about the deliberations themselves
2 or reaching any kind of a verdict in the case.  And I
3 believe counsel agreed with that and had stipulated
4 that she could be excused.  So that constitutes the
5 good cause for her excuse under Rule 23.  It is so
6 ordered.
7     Let's go ahead and give that to counsel.  Let's
8 just take a look at this.  I haven't decided exactly
9 what I'm going to do on this.
10     I thought I said too as to Count -- as to
11 instruction No. 15, the diminished capacity
12 instruction --
13     MR. CAMERON:  That's what I have, Your Honor.
14     THE COURT:  I think I probably hadn't written that
15 down or something.
16     MR. SULLIVAN:  I wrote that down too.
17     THE COURT:  As to instruction No. 15, the
18 diminished capacity, if you conclude that the
19 government has failed to prove beyond a reasonable
20 doubt that the defendant had the ability to form the
21 intention to threaten the President of the United
22 States and/or the White House telephone operator, or
23 that he acted with the intent to threaten the President
24 of the United States and/or the White House telephone
25 operator -- and I could put in there on March 1, 2016.

1    MR. CAMERON:  I have no objection to that, Your

2    Honor.

3    MR. SULLIVAN:  Neither do I.  And I see a typo.  On

4    line 8 it says "they" and I think you mean "then."

5    THE COURT:  -- then you would -- right.  I was just

6    on that word.  Thank you.

7    -- then you would return a not guilty verdict.  On

8    the other hand, if you find that the government has

9    proven all of the elements of Counts One and Two of the

10   indictment as set forth in instructions 11 and 12,

11   including the intent element, you would return a guilty

12   verdict.  Mental illness standing alone is not a basis

13   for finding the defendant not guilty because of

14   diminished capacity.  The issue for you to decide is

15   whether defendant's mental condition and/or state of

16   mind on March 1, 2016, was such that he could -- he

17   could or -- yeah, that he could or could not form the

18   specific intent to threaten the President of the United

19   States and/or the White House telephone operator.

20   MR. SULLIVAN:  Perfect.

21   THE COURT:  And your position on this?

22   MR. CAMERON:  Your Honor, I'm good with it up to

23   the final paragraph.  And the reason for that is I

24   understand the case that the government is citing, but

25   every case is different and the circumstances of every

1  case is different.  In this particular case we've given
2  instructions to the jury.  And I don't mind expanding
3  it up to paragraphs one and two.  But the government
4  argued vociferously the fact that he has mental illness
5  isn't enough to trigger that.  And I think the jury
6  heard our argument.  They have to decide whether his
7  mental illness was to such a state that he could not
8  form the intent.
9      THE COURT:  I think there's a little merit to what
10 you're saying.  At line 13 I would be inclined to say
11 this:  Mental illness standing alone may not be a basis
12 for finding the defendant not guilty because of
13 diminished capacity.  The issue for you to decide is
14 whether defendant's mental condition and/or state of
15 mind on March 1, 2016, was such that he could or could
16 not form the specific intent to threaten the President
17 of the United States.
18     MR. CAMERON:  And that's a paragraph that I'm not
19 content with, Your Honor.  And if I can just expand
20 further.  Having already given the jury instructions
21 and having the arguments made regarding those
22 instructions, for the Court to come back now and echo
23 the government's argument I think invades the province
24 of the jury to the extent that they have the case, they
25 have the evidence, they know what the facts are.

1    The first part of the instruction explains to them

2  how they have to apply those, but I think to basically

3  vouch for the government's argument I think tips the

4  scales unnecessarily.  And the Court doesn't have to

5  include this language.  They're quite capable of making

6  that determination based on the first part of the

7  instruction.  That's the issue.

8    THE COURT:  You know what I may do is just go with

9  the -- starting with the second line, which would be at

10 line 14, the issue for you to decide is whether

11 defendant's mental condition and/or state of mind on

12 March 1, 2016, was such that he could or could not form

13 the specific intent to threaten the President of the

14 United States and/or the White House telephone

15 operator.

16    MR. CAMERON:  And I could live with that language,

17 Your Honor.

18    THE COURT:  I think that's what I'm going to do.  I

19 think that tracks what you said.

20    MR. SULLIVAN:  It doesn't really directly answer.

21 I think what they're having trouble with, Your Honor,

22 is -- well, they need to be told that just because you

23 have a mental illness doesn't mean that that's an

24 immediate defense.  That seems to be what they're

25 wanting some clarification on here.  And that language

1   that you drafted -- and I have no trouble with whether
2   it's "is" or "may" -- tells them exactly what the
3   Christian case says.  And I don't think you are
4   singling out -- I think you have -- singling out the
5   government's argument.  I think that you're basically
6   telling them, look, I'm referring you back to these
7   instructions on intent.  You have to consider the
8   intent factor and you need to decide whether it was
9   sufficient enough that he could or could not form the
10  specific intent to commit both of these crimes.
11      I think all you're telling them is that just
12  because there may be some mental illness or you find
13  some mental illness, that alone is not going to excuse
14  his conduct.  It has to rise -- it has to be a
15  significant amount.
16      THE COURT:  Okay.  Well, I'm going to retype this.
17  And here's the final version of what I'm going to
18  retype.  And then we'll note any objections on the
19  record.  And then I'll see if they ask for further
20  instruction later.
21      Intent is a necessary element in both Counts One
22  and Two of the indictment.  As to instruction No. 15,
23  the diminished capacity instruction, if you conclude
24  that the government has failed to prove beyond a
25  reasonable doubt that the defendant had the ability to

1  form the intention to threaten the President of the

2  United States and/or the White House telephone

3  operator, or that he acted with the intent to threaten

4  the President of the United States and/or the White

5  House telephone operator, on March 1, 2016, then you

6  would return a not guilty verdict.  On the other hand,

7  if you find that the defendant has proven all of the

8  elements of Counts One and Two of the indictment as set

9  forth in instructions 11 and 12, including the intent

10 element, you would return a guilty verdict.  The issue

11 for you to decide is whether defendant's mental

12 condition and/or state of mind on March 1, 2016, was

13 such that he could or could not form the specific

14 intent to threaten the President of the United States

15 and/or the White House telephone operator.

16      The issue for you to decide -- I think I should say

17 the issue for you to decide -- on the diminished

18 capacity instruction, I want to say that, because there

19 are other issues they have to decide.

20      Okay.  Let's go ahead and retype this.  And then we

21 will give it to the -- to counsel and then I'll

22 probably go with that and call them back in and provide

23 them with the additional instruction.

24      Okay.  Let's just take a couple minutes.  Thank

25 you, counsel, for addressing it.  I think you've

1   provided good input to the court.

2                 (Pause in the proceedings.)

3       THE COURT:  Okay.  What I may do on line 14 -- the

4   issue for you to decide on the diminished capacity

5   instruction is whether the defendant's mental condition

6   and/or state of mind on March 1, 2016, was such that

7   he -- and then instead of what I've got there -- lacked

8   the capacity to form the intent to -- specific intent

9   to threaten the President of the United States or the

10  White House telephone operator.  I think I may use that

11  language.

12      -- he lacked the capacity to form the specific

13  intent to threaten the President of the United States

14  and/or the White House telephone operator.  I think

15  that's consistent with the evidence, consistent with

16  the law, and taken also language from the Christian

17  case.  And I think that puts it in the proper context.

18      So this is the instruction then in the form I would

19  intend to give it the jurors.  Does the government have

20  any objection other than what you stated on the record?

21      MR. SULLIVAN:  No, I have no objection to that

22  modification.  I still, of course, request that you

23  include that first sentence that you had before.

24      THE COURT:  Does the defense have any objection?

25      MR. CAMERON:  I do not, Your Honor.

1    THE COURT:  All right.  Let's go ahead and bring

2  the jurors back then and I'll reinstruct them.  This

3  will be Supplemental Instruction No. 1.

4    THE CLERK:  Are you going to retype it one more

5  time, Judge?

6    THE COURT:  I'm going to read it to them now.  And

7  then I'll give it to them as soon as they come in -- or

8  go back for deliberations.  So let's go ahead and bring

9  the jurors in.  Thank you.

10            (In the presence of the jury.)

11    THE COURT:  You may all be seated.

12    The jurors are all present.  So stipulated,

13  counsel?

14    MR. SULLIVAN:  So stipulated, Your Honor.

15    MR. CAMERON:  So stipulated, Your Honor.

16    THE COURT:  Thank you.

17    Good morning, members of the jury.

18    I received a note from you this morning, and I'll

19  just read it.  "Can we get a clarification on the

20  definition of diminished capacity, that being said,

21  what was told to us about making our judgment with the

22  phrase in mind."

23    Normally I just restate the instruction for you.

24  In this event I felt it was appropriate to give you

25  some additional instruction with respect to that

1  particular instruction.  Keep in mind you're to

2  consider this additional instruction I give you along

3  with all the other instructions I've given you.  It's

4  not to be isolated, but it will give you a further

5  definition and explanation of the diminished capacity

6  instruction that I've provided to you.  And I have it

7  typed up, so I'll give a copy of it to you so you can

8  take it into the jury room with you after I finish

9  reading it to you.

10      Intent is a necessary element in both Counts One

11  and Two of the indictment.  As to instruction No. 15,

12  the diminished capacity instruction, if you conclude

13  that the government has failed to prove beyond a

14  reasonable doubt that the defendant had the ability to

15  form the intention to threaten the President of the

16  United States and/or the White House telephone

17  operator, or that he acted with the intent to threaten

18  the President of the United States or the White House

19  telephone operator on March 1, 2016, then you would

20  return a not guilty verdict.  On the other hand, if you

21  find that the government has proven all of the elements

22  of Counts One and Two of the indictment as set forth in

23  instructions 11 and 12, including the intent element,

24  you would return a guilty verdict.

25      The issue for you to decide on the diminished

1   capacity instruction is whether defendant's mental
2   condition and/or state of mind on March 1, 2016, was
3   such that he lacked the capacity to form the specific
4   intent to threaten the President of the United States
5   and/or the White House telephone operator.
6       And that will be Supplemental Instruction No. 1.
7   And I'll send that to the jury room with you, and
8   that's my further clarification of the diminished
9   capacity instruction.  Thank you very much.  You may
10  retire and continue your deliberations.
11              (Out of the presence of the jury.)
12      THE COURT:  And I'll give you a final form of this,
13  so just hang in for a few minutes.
14      Okay.  We'll let you know if we hear again
15  something.
16                  (A recess was taken.)
17              (In the presence of the jury.)
18      THE COURT:  You may be seated.  The jurors sent a
19  note and indicated they've reached a verdict, so we
20  will call them back.
21      On the record, counsel, you'll stipulate to the
22  response I gave the jurors on the transcript that we
23  have -- we had the recording of all of the testimony
24  here, but we don't have a transcript of it and I told
25  them to rely on their recollection of the testimony of

1  all of the witnesses.

2      MR. SULLIVAN:  So stipulated, Your Honor.

3      MR. CAMERON:  We would stipulate as well, Your

4  Honor.

5      THE COURT:  Thank you very much.

6      You may all be seated.

7      All right.  Will counsel stipulate that all the

8  jurors are present?

9      MR. SULLIVAN:  So stipulated, Your Honor.

10     MR. CAMERON:  Yes, Your Honor.

11     THE COURT:  All right.  I received a note

12 indicating that the jury has reached verdicts.

13     It's signed by you, Mr. Vincent?

14     JUROR VINCENT:  Yes.

15     THE COURT:  Are you the foreperson of the jury?

16     JUROR VINCENT:  Yes.

17     THE COURT:  Without stating what verdicts the jury

18 has reached, has the jury reached a unanimous verdict

19 on both Count One and Count Two?

20     JUROR VINCENT:  Yes.

21     THE COURT:  All right.  And did you sign the

22 verdict forms?

23     JUROR VINCENT:  Yes.

24     THE COURT:  And are they contained in the envelope?

25     JUROR VINCENT:  Yes, they are.

1        THE COURT:  Thank you.

2        Ms. Clerk, if you would secure the envelope, I'll

3   take a look at it.  Thank you.

4        Ms. Clerk, if you'll read the verdict, please.

5        THE CLERK:  "We, the jury in the above-entitled

6   case, upon our oath do state that we find the Defendant

7   Steven Eugene Ford guilty of the offense charged in

8   Count One of the indictment herein; that we find the

9   Defendant Steven Eugene Ford not guilty of the offense

10  charged in Count Two of the indictment herein.  Dated

11  this 16th day of November, 2016, Foreperson."

12       THE COURT:  Members of the jury, as to Count One,

13  is this your verdict, so say you one, so say you all?

14  If it is, please state "Yes."

15              (Collective yeses by the jury.)

16       THE COURT:  As to Count Two, is this your unanimous

17  verdict, that each of you individually vote not guilty

18  as to Count Two?

19              (Collective yeses by the jury.)

20       THE COURT:  All right.  Does either the government

21  or the defense wish to have the jury polled?

22       MR. SULLIVAN:  No, Your Honor.

23       THE COURT:  Does the defense?

24       MR. CAMERON:  No, Your Honor.  Thank you.

25       THE COURT:  All right.  The court records will

1  reflect that it is a unanimous verdict.  Each of the

2  jurors responded "Yes" in connection to my question

3  that they found the defendant guilty of Count One and

4  not guilty of Count Two.

5      Ms. Clerk, you'll record the verdicts of the jury

6  in the minutes of the court.

7      This matter will be referred to the Department of

8  Probation for a presentence report.  And I will

9  continue the case for purposes of imposition of

10  judgment and sentence until what date?

11     THE CLERK:  Until Tuesday, February 7th, 2017, at

12  10:00 a.m.

13     THE COURT:  Is that satisfactory at least at this

14  point, counsel?

15     MR. CAMERON:  Yes.

16     MR. SULLIVAN:  May I have one moment, Your Honor?

17  February 17th, 2017, at 10:00 a.m.?

18     THE CLERK:  February 7th, 2017, at 10:00 a.m.

19     MR. SULLIVAN:  Yes, that's fine, Your Honor.

20     THE COURT:  Is that fine?

21     MR. CAMERON:  Yes, Your Honor.

22     THE COURT:  All right.  Thank you.

23     I would like to thank all of you for serving on

24  this jury.  It's not easy to sit in judgment of someone

25  else.  There are occasions where cases are tried before

1  me without a jury, so I know how difficult it is.
2      You were very patient and considerate.  You
3  considered all the evidence in the case.  And I
4  appreciate your services.  Our system of justice works,
5  as I indicated yesterday when you were impaneled,
6  because we have jurors like you that are willing to
7  devote the time and attention to these cases and to
8  exercise your best judgment in reaching a final
9  decision in the case.  So I deeply appreciate your
10 services.  It is what makes our Constitution work.
11 Everybody is entitled to a fair and impartial jury, and
12 you were certainly a fair and impartial jury.  And I
13 appreciate all of your service.
14     I hope you will tell those that -- your family or
15 those with whom you work, or both, that the Court
16 really appreciates the fact that they were able to make
17 the time available so that you could be here.  So thank
18 them for me too.
19     On behalf of all the judges of our court, I extend
20 my deep appreciation to you for the time and attention
21 you gave to this case and the sacrifices that you had
22 to make.
23     You're no longer going to be under a restriction
24 from me not to discuss the case.  In other words, now
25 that you have rendered your verdicts and they have been

1  put in as part of the minutes of the court and a
2  judgment will be rendered ultimately accordingly, you
3  are free to talk about the case if you want to.  You
4  can discuss it with anybody, but you don't have to.  I
5  want you to understand what your rights are.
6      Keep in mind that all of you discussed that case in
7  the jury room in private among yourselves with an
8  understanding that what you were saying was said in
9  that jury room.  So I would just express my caution,
10 having been on the bench for almost 40 years now, that
11 you may wish to discuss what you did but not
12 necessarily unless you're ordered by the court.  And I
13 think I've only had to bring either one or two juries
14 in over all those years to impeach a verdict or to talk
15 about anything in connection with a verdict, so it's
16 unlikely that there would be anything like that in this
17 case.  But unless I order it, you're not under any
18 obligation to speak with anybody about this case.
19     If anybody should approach you and try to talk with
20 you about the case, just indicate the judge says you
21 don't have to talk about the case, and you don't.  So I
22 just want you to understand what your rights are.  It's
23 up to you to decide.  You're very reasonable men and
24 women.  That's clear to me during the course of this
25 trial, so I know that you'll do what's appropriate.

1     Again, thank you very much. I'm going to direct

2 that you not be asked to serve on a federal jury again

3 in the District of Nevada for the next two years. If

4 you want to serve again, you can always let our

5 commissioner know and then she won't take you off the

6 rolls, but otherwise you'll automatically be taken off

7 the roll. If you do get a summons to appear, don't

8 ignore it, call and we'll make sure if we made a

9 mistake that your name is taken off.

10     If you took notes during the trial, you can either

11 keep those notes or put them in the jury room. Nobody

12 will look at them. They'll be destroyed. And we will

13 pick up anything else. Make sure you pick up your cell

14 phones before you leave. And if there are any other

15 personal items that you have, please pick those up.

16     Again, thank you very much. Our system of justice

17 works because of people like you. Perhaps I'll see you

18 again if I'm still here two years from now and you're

19 called on jury duty again. I would be delighted to

20 have you serve on another case. So thank you. You're

21 excused.

22            (The jury left the courtroom.)

23     THE COURT: All right. You may be seated.

24     I think that's all I have unless the government has

25 anything else to add.

1        MR. SULLIVAN:  No, I don't have anything else.

2        THE COURT:  Does the defense?

3        MR. CAMERON:  No, Your Honor.

4        THE COURT:  Thank you very much.  Counsel, you both

5   did a fine job on behalf of your respective -- the

6   parties that you represent.  I appreciate it.  You've

7   been very respectful of the court, and I appreciate

8   that.  You've served justice well.  So thank you for

9   all you've done here.

10       The matter is continued for sentencing until that

11  date, and we'll receive the presentence report.  If you

12  have objections to the report, then you'll file those

13  in accordance with the rules of the court.  Thank you

14  very much.

15       We'll be in recess.

16       (The proceedings were concluded at 1:11 p.m.)

17                       --o0o--

18

19

20

21

22

23

24

25

```
 1  STATE OF NEVADA    )
                       ) ss.
 2  COUNTY OF WASHOE   )

 3

 4       I, LORI URMSTON, Certified Court Reporter, in and

 5  for the State of Nevada, do hereby certify:

 6       That the foregoing proceedings were taken by me

 7  at the time and place therein set forth; that the

 8  proceedings were recorded stenographically by me and

 9  thereafter transcribed via computer under my

10  supervision; that the foregoing is a full, true and

11  correct transcription of the proceedings to the best

12  of my knowledge, skill and ability.

13       I further certify that I am not a relative nor an

14  employee of any attorney or any of the parties, nor am

15  I financially or otherwise interested in this action.

16       I declare under penalty of perjury under the laws

17  of the State of Nevada that the foregoing statements

18  are true and correct.

19       DATED: At Reno, Nevada, this 6th day of

20  April, 2017.

21

22                          LORI URMSTON, CCR #51

23
                          _____
24
                            LORI URMSTON, CCR #51
25
```